**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NIPPON LIFE INSURANCE COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> OPENAI FOUNDATION, and OPENAI GROUP PBC, <br><br> Defendants. | Case No. 1:26-CV-02448 <br><br> Hon. John F. Kness |

**OPENAI DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
<u>DISMISS PLAINTIFF'S COMPLAINT</u>**

1

**<u>INTRODUCTION</u>**

Plaintiff Nippon Life Insurance Company of America ("Nippon") brings this lawsuit for unlicensed practice of law, tortious interference, and abuse of process because it objects to how a third-party *pro se* litigant allegedly used ChatGPT to advance legal claims against Nippon. But Nippon's apparent frustration with having to defend a *pro se* lawsuit is no basis to hold OpenAI liable. ChatGPT is not a lawyer and it does not practice law.

OpenAI operates ChatGPT, a consumer-facing platform through which users can "chat" with AI models. ChatGPT is used by hundreds of millions of people worldwide to enhance productivity and efficiency. For many users, including *pro se* litigants, it is a helpful tool and research aid that advances access to justice in courts throughout the United States. Benefits resulting from the use of ChatGPT as a tool by *pro se* litigants have been recognized, authorized, and encouraged by the Illinois Supreme Court, the Seventh Circuit and myriad others.

The gravamen of Nippon's claims against OpenAI is that non-party Graciela Dela Torre used ChatGPT to allegedly improperly challenge a settlement agreement with Nippon, and to allegedly generate baseless and abusive filings in her lawsuits. Based on this, Nippon claims that ChatGPT interfered with its settlement agreement with Dela Torre, aided and abetted her abuse of process, and engaged in the unauthorized practice of law.

None of these claims are plausibly alleged and each of them fails as a matter of law. ChatGPT does not act as an attorney or claim to be one. In fact, Dela Torre agreed not to use ChatGPT "as a substitute for professional advice." ChatGPT also does not and cannot have the requisite level of knowledge and intent required to aid and abet Dela Torre's alleged abuses or to tortiously interfere with her agreement with Nippon. Each claim also fails for additional, independent reasons.

2

Dela Torre was entitled to represent herself against Nippon and was entitled to use ChatGPT as a tool to do so.  Whether she made appropriate arguments is a question of her actions, and was for the district court judge presiding over her cases to decide.  Under black-letter Illinois law, any redress Nippon seeks for Dela Torre's alleged conduct in their lawsuits should have been sought in those cases.  As to this action and OpenAI, existing law is clear that Nippon does not and cannot plead any colorable claim.  OpenAI respectfully moves to dismiss Nippon's lawsuit with prejudice.

## BACKGROUND

***The underlying litigation between Graciela Dela Torre and Nippon.***  In December 2022, Dela Torre sued Nippon in this court alleging that Nippon wrongfully terminated her insurance benefits under a long-term disability policy.[1]  In January 2024, Dela Torre and Nippon entered a Settlement Agreement and Mutual Specific Release resulting in the dismissal of the case with prejudice.  Compl. ¶¶ 45, 47.

About a year later, Dela Torre had second thoughts and consulted her attorneys about vacating the settlement with Nippon.  Compl. ¶ 48.  When they advised that her case could not be reopened, she appeared *pro se* and filed a motion to vacate the settlement agreement and reopen the case.  Compl. ¶¶ 49, 57.  Dela Torre allegedly used ChatGPT to help draft the motion and other filings made in connection with it.[2]  Compl. ¶¶ 54, 64.  Dela Torre's motion was denied on February 13, 2025.  Compl. ¶ 61.

---

[1] *See Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 (N.D. Ill.) (Pallmeyer, J).
[2] For purposes of this motion only, OpenAI accepts Nippon's well-pleaded factual allegations as true.

On March 10, 2025, Dela Torre amended her *pro se* complaint in another action in this court to add Nippon as a defendant, asserting the same claims that she had settled in her prior case based on the alleged invalidity of the settlement and release.[3]  That case is currently stayed pending arbitration, which Nippon successfully moved to compel.  Dela Torre allegedly used ChatGPT to draft her pleadings and other filings in that case too.  Compl. ¶¶ 66-68.

*ChatGPT.*  ChatGPT is a software program developed and made available to the public by defendant OpenAI.  Compl. ¶ 9.  ChatGPT uses large language models (LLMs) to "analyze[] the text of user prompts by identifying patterns, context, and linguistic relationships, and then generates a response ["Output"] by predicting the most appropriate sequence of words based on its training."  Compl. ¶ 27.

The complaint incorporates by reference ChatGPT's Terms of Use ("TOU"), which govern use of ChatGPT.  Compl. ¶¶ 41, 109.  The TOU may therefore be considered in deciding this motion.[4]  Under the TOU, users like Dela Torre expressly agree that they will not rely on Output "as a substitute for professional advice" and that they will "evaluate Output for accuracy and appropriateness for [their] use case, including using human review as appropriate, before using or sharing Output."  Baskin Decl. Ex. A, OpenAI Dec. 11, 2024 TOU at 4-5.  Users also agree that they are "responsible for Content, including that it does not violate any applicable law or these Terms."  *Id*. at 3.

---

[3] *See Dela Torre v. Davies Life & Health*, *et al*, 1:25-cv-01483 (N.D. Ill.) (Pallmeyer, J).
[4] *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider "documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim."); *Evanger's Cat & Dog Food Co., Inc. v. Thixton*, 412 F. Supp. 3d 889, 895 (N.D. Ill. 2019) (considering a screenshot of the revision history of a website attached to a motion to dismiss because it was central to the claim).

The TOU contains a provision entitled "Limitation of liability," as well as a disclaimer of warranties, which explains (among other things) that the ChatGPT service is provided "as is" and that OpenAI does not warrant that ChatGPT results will be "accurate or error free." *Id*. at 5-6. This provision further notes that ChatGPT users acknowledge their use of ChatGPT is "at your sole risk and you will not rely on output as a sole source of truth or factual information." *Id*. at 5. The TOU provides that ChatGPT users must comply with OpenAI's Usage Policies, which prohibit the use of ChatGPT as a substitute for professional advice. *Id*. at 2; *see also* Compl. at 11, 12, 13, 14, 15, 16, 17, 18, 29 (ChatGPT interface warning users that "ChatGPT can make mistakes. Check important info.").

Dela Torre herself understood that she used ChatGPT as a tool to help her, as a *pro se* litigant, navigate the legal system without the benefit of counsel. Compl. ¶ 52.

## LAW AND ARGUMENT

### I. LEGAL STANDARD

This motion under Rule 12(b)(6) "challenges the sufficiency of the complaint." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under familiar principles, the complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kasongo v. Am. Gen. Life Ins. Co.*, 479 F. Supp. 3d 754, 759 (N.D. Ill. 2020) (Kness, J.) (granting 12(b)(6) motion where plaintiff "failed to plead a viable breach of contract based on the plain language of the Annuity").

5

## II. ILLINOIS PROHIBITS CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACT BASED ON ALLEGED MISCONDUCT IN PRIOR LAWSUITS

Nippon's claim for intentional interference with contract (Count I) is prohibited under Illinois law. The only material allegation against OpenAI is that Dela Torre used ChatGPT as a tool to help generate pleadings and other filings in her cases against Nippon. Under well-settled principles, however, Nippon may not base a claim for intentional interference with contract on alleged misconduct in a prior action or the wrongful filing of a prior lawsuit. *See, e.g., Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (tortious interference "liability may not be based on the filing of the state court suit").

Illinois recognizes only two claims, malicious prosecution and abuse of process, for the wrongful filing of a lawsuit. *Id.* As the court explained in *Ybarra v. Centrust Bank*, *N.A.*, 2024 IL App (1st) 232072-U (2024) ¶ 42 (Ill. Ct. App. 2024):

> Save for these two claims, petitions to redress injuries resulting from alleged misconduct in judicial proceedings should be brought in the same litigation, not a separate suit before a new tribunal or judge . . . . This makes sense, for otherwise litigation would never end and other courts would be called upon to review the actions of parties in separate litigation of which they have no personal knowledge.

Illinois law prohibits Nippon from basing the instant claim for tortious interference with contract on alleged misconduct by any participant in Dela Torre's cases against it. *See, e.g.*, *Havoco*, 702 F.2d at 647 ("[P]laintiff's only allegation against the firm is that it participated in the filing of the lawsuit, and under Illinois law, such conduct cannot give rise to liability as a tortious interference with business relationships"); *Pittsfield Dev., LLC v. Lynd*, 2020 WL 6701104, at *7 (N.D. Ill. Nov. 13, 2020) (collecting cases applying the *Havoco* principle to tortious interference claims); *Creation Supply Inc. v. Hahn*, 608 F. Supp. 3d 668, 693 (N. D. Ill. 2022), *aff'd* 61 F.4th (7th Cir. 2023) (Plaintiff "cannot base tort liability on the filing of a lawsuit, even a 'factually and legally flawed' one" (internal citations omitted)).

Nippon's claim for tortious interference with contract is also barred by the Illinois litigation privilege.  That privilege affords attorneys and parties complete immunity with respect to communications in judicial proceedings regardless of their motives in making them and irrespective of the reasonableness of their conduct.  *Id.* at 697.

Again, the only material allegation against OpenAI is that Dela Torre used ChatGPT to help generate her pleadings and other filings in her lawsuits against Nippon.  That is conduct by Dela Torre, not ChatGPT.  Regardless, this alleged "litigation-related conduct" is immune from tort liability under Illinois law.  *See Creation Supply*, 608 F. Supp. 3d at 697-98 (litigation privilege defeated tortious interference claim that "Defendant attorneys allegedly interfered with their client's contract with the plaintiff through litigation (or litigation-related conduct and communications) about that contract."); *Toyo Tire Corp. v. Atturo Tire Corp*, 2024 WL 4404358, at *12 (Fed. Cir. Oct. 4, 2024), *cert. denied* 145 S. Ct. 2750 (2025) (litigation privilege defeats tortious interference claim; applying Illinois law); *Eagle Trust Fund v. Miller*, 2022 IL App (5th) 210156-U ¶ 20, 36, 51 (Ill. Ct. App. 2022).

## III.  NIPPON FAILS TO STATE A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

Even if Nippon's tortious interference claim were not prohibited by Illinois law and barred by the litigation privilege (it is), the claim also fails because Nippon does not and cannot plead facts necessary to support the required elements.

### A.  Nippon fails to plead that Dela Torre breached the underlying settlement agreement.

"Where a Plaintiff fails to plead facts that show a breach of contract, a claim for tortious interference with a contract must be dismissed." *Marcial v. Rush Univ. Med. Ctr.*, 2017 WL 2180503, at *5 (N.D. Ill. May 18, 2017).  Dela Torre's attempt to vacate her settlement with Nippon by challenging the validity of its release provision is not a breach of contract.   A release

is an affirmative defense, its existence "does not result in breach upon the filing of a suit." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005) (plaintiff who sued over released claims did not breach release); *Davis v. Ret. Plan of Phibro Animal Health Corp.*, 845 F. Supp. 2d 915 (S.D. Ill. 2012) (dismissing counterclaim for breach of release); *Buller v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 757, 766 (S.D. Ill. 2006) (same; "[Defendant]'s claim that [Plaintiff] breached a settlement agreement with the insurer is merely an affirmative defense of release."). As a matter of law, Dela Torre's challenge to the validity of her settlement agreement with Nippon cannot, in and of itself, constitute breach of that contract. That independently precludes any tortious interference claim against OpenAI.

### B. Nippon fails to allege plausibly that ChatGPT had, or could have, the knowledge and intent necessary to tortiously interfere with a contract.

To state a claim for tortious interference, Nippon must also plausibly allege that OpenAI knew of the contract between Dela Torre and Nippon and knew that it was interfering with its performance. *Law Offices of Charles Chejfec, LLC v. Franz*, 232 N.E.3d 1111, 1122-1123 (Ill. Ct. App. 2023). The mere allegation that Dela Torre described the existence and terms of the contract in her prompts to ChatGPT (Compl. ¶ 53) is insufficient to state a claim.[5]

ChatGPT is a tool, not a person. *Warner v. Gilbarco, Inc.*, 2026 WL 373043, at \*4 (E.D. Mich. Feb. 10, 2026) ("ChatGPT (and other generative AI programs) are tools, not persons."). ChatGPT cannot have the "knowledge" or "intent" required to tortiously interfere.

Rather, ChatGPT is an LLM-powered platform that analyzes the text of user prompts by identifying patterns, context, and linguistic relationships, and then generates textual output by

---

[5] Nippon does not allege that OpenAI knew anything about Dela Torre, her use of ChatGPT, Nippon, or any lawsuit to which they were parties. Nor does it allege that OpenAI intended anything with respect to them.

predicting the most appropriate sequence of words based on its training. As the court explained

in *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, 2025 WL 2105286, at *1

(E.D. Mich. July 28, 2025),

> [LLMs] are not designed to answer questions factually. They are designed to mimic patterns of words, probabilistically. When they are "right," it is because correct things are often written down in the dataset they were trained on, not because they can independently fact-check themselves in the same way a human would. So when an LLM "explains" the holding of a case, it does so because it predictively strings together a group of words that, when read by a lawyer, happens to represent something that is either true or false about that case. But on the back end, all the model was meant to do was make a sentence that "looks" correct, which it did. They are word guessers; they are trying to predict what the next words would be if that sentence appeared on the internet. It has no way of "knowing" whether that sentence it created about the case's holding was in fact true or false.

Nippon's allegation that ChatGPT "knowingly" "induced" Dela Torre's alleged breach of

the settlement agreement (Compl. ¶ 111) is incorrect as a matter of law and fundamentally

incompatible with the nature of the technology. "A necessary prerequisite to the maintenance of

an action for tortious interference with contract is a defendant's intentional and unjustified

inducement of a breach of contract." *Webb v. Frawley*, 906 F.3d 569, 579 (7th Cir. 2018). The

requisite intent to induce requires active persuasion, encouragement, or incitement that goes far

beyond passively and automatically generating information in response to prompts. *Id.* Under

this standard, even "knowledge that one's conduct is substantially certain to result in one party

breaking its contract with another does not constitute inducement." *Id.* (quotations omitted).

Again, ChatGPT is incapable of the intent necessary to state a claim. As Nippon

concedes, ChatGPT produces outputs by "predicting the most appropriate sequence of words

based on its training," (Compl. ¶ 27), it is not conscious and cannot act with "intent." *See* 720

Ill. Comp. Stat. Ann. 5/4-4 ("A person intends, or acts intentionally or with intent, to accomplish

a result or engage in conduct described by the statute defining the offense, when his conscious

objective or purpose is to accomplish that result or engage in that conduct."); Black's Law Dictionary (defining intent as "[p]urpose; formulated design; a resolve to do or forbear a particular act; aim; determination."). Ultimately, Nippon concedes the obvious: *Dela Torre* "desire[d] to vacate" the agreement. (Compl. ¶ 53). Neither ChatGPT nor OpenAI intended or encouraged Dela Torre's alleged breach.

## IV. NIPPON FAILS TO STATE A CLAIM FOR AIDING AND ABETTING AN ABUSE OF PROCESS BY DELA TORRE

Nippon's claim for aiding and abetting abuse of process fails at every level. Nippon fails to allege that Dela Torre committed abuse of process under Illinois law. For even stronger reasons, Nippon fails to allege plausibly that OpenAI or ChatGPT knowingly and substantially assisted an abuse of process.

### A. Nippon fails to allege that Dela Torre abused process under Illinois law.

Claims for abuse of process are disfavored and therefore narrowly and strictly construed under Illinois law. *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183 (2003); *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004); *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 843 (N.D. Ill. 2013). "Abuse of process is defined as the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Kumar*, 820 N.E.2d at 1173. Abuse of process requires "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Id.*

The second element is the gravamen of this claim. *Id.* To satisfy it, "the plaintiff must show that the court's process was used to accomplish some result that is beyond the purview of the process, such as an arrest, the seizure of property, or a fraudulent and malicious manipulation of service of summons." *Leventhal*, 917 F. Supp. 2d at 843 (citing *Kumar*, at 820 N.E.2d at 1173-74) (internal quotations omitted). "In this context, process is defined as any means used by

the court to acquire or to exercise jurisdiction over a person or over specific property." *Id.* (internal citations and quotation omitted). Nippon's complaint alleges nothing of the kind and therefore fails to plead that Dela Torre abused process.

Instead, Nippon purports to rely on allegations that Dela Torre frivolously and maliciously filed lawsuits, motions, and requests for judicial notice. Compl. ¶¶ 84-102, 118. These allegations fail as a matter of law. Actions by a party, and not by the court, do not support a claim for abuse of process. *Villarreal v. Arnold*, 2016 WL 7374272, at *3 (N.D. Ill. Dec. 20, 2016); *see also Edelson PC v. Bandas Law Firm PC*, 2018 WL 3496085, at *8 (N.D. Ill. July 20, 2018) ("Actions solely undertaken by a party are not process; process is issued by the court, under its official seal.") (internal quotations omitted). Moreover, "mere institution of proceedings, even with a malicious motive, does not in and of itself constitute abuse of process." *Kumar*, 820 N.E.2d at 1176. Nor is filing "numerous and repeated lawsuits, motions and pleading[s] . . . to harass, embarrass, and financially ruin Plaintiff." *Leventhal*, 917 F. Supp. 2d at 843; *see also Malibu Media, LLC v. Khan*, 2019 WL 1382082, at *3 (N.D. Ill. Mar. 27, 2019).

Nippon fails to plead that a court took any relevant action against it, much less process sufficient to state a claim under Illinois law. Moreover, Nippon's abuse of process claim is also barred by the litigation privilege because it pertains only to Dela Torre's litigation communications and conduct. *Motykie v. Motykie*, 2025 WL 2160719, at *5-6 (N.D. Ill. July 30, 2025) (dismissing abuse of process claim based on litigation privilege); *Cole v. Yanoff*, 2025 IL App (1st) 241017-U, ¶ 17 (Ill. Ct. App. 2025) (same); *Gorman-Dahm v. BMO Harris Bank, N.A.*, 94 N.E.3d 257, 262-263 (Ill. Ct. App. 2018) (same).

In sum, Nippon's complaint fails to plead an underlying abuse of process by Dela Torre. As a result, Nippon's aiding and abetting claim against OpenAI also necessarily fails.

11

**B.**     **Nippon fails to allege plausibly that OpenAI or ChatGPT knowingly and substantially assisted an abuse of process.**

Nippon does not even purport to allege that OpenAI knowingly provided Dela Torre with substantial assistance with any misconduct.  Nor could it.  Aiding and abetting "refers to a conscious, voluntary, and culpable participation in another's wrongdoing."  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023).

Making available a general purpose tool like ChatGPT for use by millions of people in the public is not aiding and abetting.  *Id.* at 498-499 (defendants' "recommendation algorithms" that matched alleged ISIS content to "any user who is more likely to view that content" insufficient to constitute substantial assistance; "service providers" cannot "incur culpability merely for providing their services to the public"); *see also Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 969, 974–75 (2026) (Sotomayor, J., concurring) ("Plaintiffs cannot prove that Cox had the requisite intent to aid copyright infringement for Cox to be liable on a common-law aiding-and-abetting theory.  [. . . ] [B]ased on plaintiffs' evidence, Cox does not actually know that specific users will commit infringement using Cox's network. [. . . ] That informational gap is fatal here."); *Fed. Trade Comm'n v. Walmart Inc.*, 664 F. Supp. 3d 808, 828 (N.D. Ill. 2023) ("Processing routine transactions isn't substantial assistance.").

Absent any factual basis to allege that OpenAI knowingly and substantially assisted Dela Torre's alleged misconduct, Nippon relies on the allegation that ChatGPT did so by "providing Dela Torre with legal advice, legal analysis and legal research."  Compl. ¶ 119.  Again, ChatGPT is software that responds to users by predicting the most appropriate sequence of words based on its training.  ChatGPT is a tool, not a person, and cannot have the requisite "knowledge" or "intent" to aid and abet.  Nippon does not plausibly allege either that ChatGPT has the capacity

12

to consciously, voluntarily and culpably participate in any alleged wrongdoing by Dela Torre or that OpenAI did so.

## V. NIPPON FAILS TO STATE A CLAIM FOR UNLICENSED PRACTICE OF LAW

### A. Nippon does not have standing to bring the claim.

Nippon does not have standing to bring an unauthorized practice of law claim against OpenAI. The only people who can bring an unauthorized practice of law cause of action are other attorneys licensed in Illinois. *Jenkins v. Burkey,* 2017 WL 2687815, at \*6 (S.D. Ill. June 22, 2017); *see also Access Care MSO, LLC v. Oberheiden Law Group PLLC*, 2020 WL 1139257, at \*2 n.3 (N.D. Ill. Mar. 9, 2020). Nippon is neither an attorney nor an attorney licensed in Illinois. On the contrary, it is an aggrieved litigant improperly seeking redress for its *pro se* adversary's alleged misconduct in collateral litigation. It has no standing.

Nippon is also incapable of plausibly alleging that ChatGPT's output in response to Dela Torre's prompts constitutes the unauthorized practice of law in Illinois. The Seventh Circuit Court of Appeals, the Illinois Supreme Court and the District Court Judge presiding in Dela Torre's cases against Nippon have all recognized that the use of AI platforms like ChatGPT by *pro se* litigants is appropriate, enhances access to justice, and should not be discouraged.

In *Jones v. Kankakee County Sheriff's Department*, 164 F.4th 967, 970 (7th Cir. 2026), the court recognized that "AI presents great promise for enhancing access to justice for those without the resources to retain counsel or to represent themselves effectively." Citing Rule 11, the *Jones* court cautioned that all litigants, including self-represented parties using AI, remain responsible for their own filings, while acknowledging "the many efficiencies and promises offered by AI." *Id.* at 971.

13

Similarly, the Illinois Supreme Court Policy on Artificial Intelligence provides that the use of AI by self-represented litigants, and others, "may be expected, should not be discouraged, and is authorized provided it complies with legal and ethical standards." Ex. B at 2. The policy provides that "[d]isclosure of AI use should not be required in a pleading" and instructs that self-represented litigants are accountable for their final work product."[6] *Id*.

Likewise, United States District Judge Pallmeyer has commented that "[i]n many ways, technology is a great leveler . . . You can even see pleadings from *pro se* litigants that read like the real thing, because they've gotten access to software that helps them write it. Of course, a little knowledge is a dangerous thing, and we have to be careful about what those people are saying, but overall it's certainly beneficial."[7] Ex. C at 2. As Illinois courts expressly encourage use of ChatGPT by unrepresented litigants, the alleged improper use of the tool by one *pro se* litigant cannot plausibly constitute the unauthorized practice of law by OpenAI.

## B. Nippon fails to plausibly allege that ChatGPT practices law.

The Illinois Attorney Act prohibits an unlicensed "person" from "practicing, charging or receiving fees for legal services." 705 ILCS 205/1. Again, ChatGPT and its underlying LLMs are tools, not persons. *United States v. Heppner*, --- F. Supp. 3d ---, 2026 WL 436479, at *2 (S.D.N.Y. Feb. 17, 2026); *Warner v. Gilbarco, Inc.*, 2026 WL 373043, at *4 (E.D. Mich. Feb. 10, 2026) ("ChatGPT (and other generative AI programs) are tools, not persons.").

ChatGPT is not a "person," but a tool that relies on statistics to predict the most appropriate sequence of words based on its training. It is incapable of practicing law within the meaning of the statute. As *Heppner* explained, practicing law requires a trusting human

---

[6] Ex. B, Ill. S. Ct. Policy on AI at 2.
[7] Ex. C, Justin Smith, *Judges Share Their Perspective on Generative AI and the Law at Everlaw Summit* at 2 (2024).

relationship with a professional who owes fiduciary duties and is subject to discipline. "No such relationship exists, or could exist, between an AI user and a platform like [ChatGPT]." *Id.*

Practicing law also requires the use by a person of a "degree of legal knowledge and skill." *Clark v. Gannett Co.*, 122 N.E.3d 376, 390 (Ill. Ct. App. 2018); *see also King v. First Cap. Fin. Servs. Corp.*, 215 Ill. 2d 1, 14 (2005) (tasks "constitute[] the practice of law" where they "require[] the skill of an attorney"). Again, ChatGPT is not a person and neither has nor uses any degree of legal knowledge or skill. On the contrary, LLMs like ChatGPT are "word guessers; they are trying to predict what the next words would be if that sentence appeared on the internet." *Seither*, 2025 WL 2105286, at *5.

Finally, ChatGPT does not claim to be an attorney or to provide professional legal services. "Illinois courts have not recognized a cause of action for the unauthorized practice of law unless the plaintiff alleged that defendants either had represented themselves as attorneys, or negligently provided services, thereby causing damages." *Michalowski v. Flagstar Bank, FSB*, 2002 WL 113905, at *8 (N.D. Ill. Jan. 25, 2002) (internal quotations omitted). ChatGPT did neither. On the contrary, Dela Torre promised not to rely on the tool "as a substitute for professional advice." TOU at 5.

Dela Torre is entitled to represent herself. Her use of ChatGPT as a tool in connection with that representation was entirely appropriate. As the Seventh Circuit, the Illinois Supreme Court and many others recognize, she remained responsible for her pleadings, other filings and litigation conduct. Any grievance Nippon has with respect to Dela Torre's litigation conduct should have been raised in those litigations. Nippon has no proper recourse against OpenAI.

## CONCLUSION

For the foregoing reasons, Nippon's Complaint should be dismissed with prejudice.

15

Dated: May 15, 2026

Respectfully submitted,

*/s/ Steven P. Mandell*
Steven P. Mandell (ARDC #6183729)
Mandell PC
1 North Franklin Street, Suite 900
Chicago, IL 60606
(312) 801-6337
smandell@mandellpc.com

*Of Counsel:*
John P. Flynn  (*pro hac vice* pending)
Joshua A. Baskin (*pro hac vice* pending)
WILSON SONSINI GOODRICH
& ROSATI, P.C.
One Market Plaza, Spear Tower Suite 3300
(415) 947-2000
jflynn@wsgr.com
jbaskin@wsgr.com

*Counsel for Defendants*
*OpenAI Foundation and OpenAI*
*Group PBC*

16

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of the foregoing document has been served on May 15, 2026 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

/s/ Steven P. Mandell