

 

**FILED**
5/29/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AXM

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **NIPPON LIFE INSURANCE COMPANY OF AMERICA,** | Case No. 1:26-cv-02448 |
| Plaintiff, | Hon. John F. Kness |
| v. | |
| **OPENAI FOUNDATION, and OPENAI GROUP PBC,** | |
| Defendants. | |

## MOTION OF DR. MICHAEL SPECE FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Proposed amicus curiae Dr. Michael Spece respectfully moves for leave to file the attached proposed brief, labeled Exhibit A, in support of Defendants OpenAI Foundation and OpenAI Group PBC's pending Motion to Dismiss Plaintiff's Complaint, ECF No. 14. The Motion to Dismiss is currently held in abeyance pending resolution by Judge Pallmeyer of Defendants' motion to reassign. In support of this motion, Dr. Spece states as follows:

1. Defendants filed their Motion to Dismiss and supporting memorandum on May 15, 2026. They also filed notice of a motion to reassign that same day. On May 22, 2026, the Court held Defendants' Motion to Dismiss in abeyance pending resolution by Judge Pallmeyer of the reassignment motion. This motion is timely because it is submitted on May 29, 2026, fourteen days after the Motion to Dismiss, seven days after the abeyance order, and before merits briefing on the Motion to Dismiss has proceeded under an active schedule. It will not delay the proceedings.

2. Dr. Spece is a self-represented court user and technically sophisticated user of AI tools with doctoral training in machine learning and statistics. He files as an individual proposed amicus, not as counsel for any party and not as a representative of any class, organization, or constituency.

3. Dr. Spece's proposed brief addresses a narrow issue raised by the Complaint and Defendants' motion: the practical and constitutional risks of using an overbroad unauthorized-practice-of-law theory against an AI provider based on ordinary, user-directed legal research, drafting, organization, accessibility, and verification assistance.

4. The proposed brief will assist the Court because it does not merely repeat Defendants' corporate and doctrinal defenses. Instead, it explains how the rule urged by Plaintiff

1

would affect court users who rely on AI as a research, drafting, organization, accessibility, language-assistance, and verification tool while retaining responsibility for their own filings, especially when those users lack practical access to licensed counsel.

5. The proposed brief also addresses implementation and administrability. A broad rule condemning AI-assisted legal work would not stop AI use. It would drive it underground, widen the represented/unrepresented divide, raise serious access-to-courts and due-process concerns, and leave courts with less transparency and worse incentives. Courts can address inaccurate or abusive filings through existing accountability mechanisms, including Rule 11, sanctions, verification duties, evidentiary rules, and case-specific orders.

6. Dr. Spece has not obtained party consent. For purposes of Judge Kness's motion procedures, this motion should be treated as not agreed. Dr. Spece respectfully requests that the Court decide the motion on the papers, without separate amicus-motion briefing unless the Court orders otherwise.

7. No party or party's counsel authored this motion or the proposed amicus brief in whole or in part. No party, party's counsel, or other person contributed money intended to fund preparing or submitting this motion or the proposed brief.

WHEREFORE, proposed amicus curiae Dr. Michael Spece respectfully requests that the Court grant leave to file the attached proposed brief, labeled Exhibit A, as amicus curiae in support of Defendants' Motion to Dismiss.

Dated: May 29, 2026

/s/ Michael Spece
Dr. Michael Spece
Proposed Amicus Curiae
8917 River Rd 7
North Bergen, NJ 07047
Telephone: 212-CONSULT (212-266-7858)
Email: Michael@Spece.AI

2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**NIPPON LIFE INSURANCE COMPANY**
**OF AMERICA,**
Plaintiff,

v.

**OPENAI FOUNDATION, and**
**OPENAI GROUP PBC,**
Defendants.

Case No. 1:26-cv-02448

Hon. John F. Kness

## EXHIBIT A
### PROPOSED BRIEF OF AMICUS CURIAE DR. MICHAEL SPECE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **NIPPON LIFE INSURANCE COMPANY OF AMERICA,** | Case No. 1:26-cv-02448 |
| Plaintiff, | Hon. John F. Kness |
| v. | |
| **OPENAI FOUNDATION, and OPENAI GROUP PBC,** | |
| Defendants. | |

**BRIEF OF AMICUS CURIAE DR. MICHAEL SPECE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# Interest of Amicus

Dr. Michael Spece is a self-represented court user and technically sophisticated user of AI tools with doctoral training in machine learning and statistics. He submits this brief as an individual amicus to offer a perspective distinct from the parties': how an overbroad unauthorized-practice-of-law theory directed at an AI provider would affect court users who use AI for accessibility, research, drafting, organization, language assistance, and verification while retaining responsibility for their own decisions and filings.

Amicus does not appear for any accessibility, technology, or self-represented-litigant organization. Those contexts matter here only because they illustrate practical access barriers that courts should not worsen by treating ordinary AI-assisted self-help as unlawful legal practice.

Amicus does not ask this Court to excuse false citations, frivolous filings, bad-faith litigation conduct, or misuse of AI. Accuracy, candor, and Rule 11 obligations apply to all litigants. The point is narrower: a person does not transform a software tool, a search engine, a template, an internet article, a grammar aid, or a supportive friend into that person's lawyer merely by using help to understand, draft, or organize legal materials.

No party or party's counsel authored this brief in whole or in part. No party, party's counsel, or other person contributed money intended to fund preparing or submitting this brief.

# Argument

## I. A rule permitting attorney-supervised AI assistance while condemning comparable user-directed self-help would widen the represented/unrepresented divide.

Lawyers may use generative AI. The ABA has recognized that generative AI tools may assist lawyers with legal research, contract review, due diligence, document review, regulatory compliance, and drafting letters, contracts, briefs, and other legal documents, subject to professional duties including competence, confidentiality, supervision, candor, communication, meritorious claims and contentions, and reasonable fees. ABA Formal Op. 512, *Generative Artificial Intelligence Tools* 1–2 (July 29, 2024).[1] Lawyers routinely use research databases, templates, treatises, search engines, grammar tools, e-discovery tools, citation software, and now AI-assisted tools.

Plaintiff's UPL theory is directed at Defendants, not at individual users. But the theory necessarily turns on user conduct: it asks the Court to treat ordinary legal-information assistance as the practice of law when a user asks an AI tool for help with legal material. The question is therefore whether comparable assistance is lawful when mediated by counsel but unlawful or legally risky when used in a human-reviewed way by an unrepresented person. If so, represented litigants would receive AI-mediated legal work through attorneys, while self-represented litigants would be told that user-directed AI assistance by an unrepresented person risks making the provider an unauthorized practitioner. That asymmetry would not protect courts. It would widen the access gap courts already struggle to manage.

The Court need not decide a standalone equal-protection claim to avoid that result. It is enough to recognize the serious constitutional concern: a rule that tolerates AI-assisted legal work when routed through licensed counsel but treats direct, human-reviewed use by an unrepresented person as suspect would allocate practical access to modern legal tools by representation status and wealth. That is a poor fit for a doctrine meant to protect the public from unlicensed representation, not to reserve useful information technology for those who can afford an intermediary.

Illinois has chosen a more workable path. The Illinois Supreme Court's Policy on Artificial Intelligence states that AI use by litigants, attorneys, judges, judicial clerks, research attorneys, and court staff "may be expected, should not be discouraged, and is authorized" when consistent with legal and ethical standards. The policy also makes the key accountability move: attorneys, judges, and self-represented litigants remain accountable for their final work product. Ill. Sup. Ct., *Policy on Artificial Intelligence* 2 (eff. Jan. 1, 2025).[2]

The Seventh Circuit's recent guidance points the same way. In *Jones v. Kankakee County Sheriff's Department*, 164 F.4th 967 (7th Cir. 2026), the court confronted what it believed were AI-hallucinated quotations in a pro se brief. It did not announce a categorical

---

[1] https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/ethics-opinions/aba-formal-opinion-512.pdf.

[2] https://www.illinoiscourts.gov/News/1485/Illinois-Supreme-Court-Announces-Policy-on-Artificial-Intelligence/news-detail/.

rule against pro se AI use. It emphasized that "AI presents great promise for enhancing access to justice for those without the resources to retain counsel or to represent themselves effectively," while reminding litigants that Rule 11 requires reasonable inquiry and truthful filings. Id. at 970–71. That is the right line: regulate representations to the Court, not private tool use as such.

## II. UPL should turn on who undertakes representation, not whether a litigant used a modern information tool.

Federal law permits parties to plead and conduct their own cases personally or by counsel. 28 U.S.C. §1654. Illinois law prohibits a person from practicing as an attorney or counselor at law without a license. 705 ILCS 205/1. Public Illinois Courts/ARDC guidance identifies paradigmatic UPL concerns such as non-attorneys appearing in court and advocating for others, drafting pleadings and legal documents for others, and falsely holding themselves out as licensed attorneys.[3]

Those principles are not threatened by user-directed AI assistance. A court user who chooses objectives, supplies facts, reviews output, decides what to file, signs the document, and remains answerable to the Court has not made the tool into counsel. Nor has the provider undertaken courtroom representation merely because the tool is useful for legal work. The relevant boundary is representation: appearing for another, signing for another, holding out as counsel, or assuming professional responsibility for another person's legal matter.

The same distinction applies to ordinary human help. A non-lawyer friend generally may not represent another person in court, sign filings for that person, hold out as counsel, or provide legal services as a substitute for a licensed attorney. The Seventh Circuit's practitioner guidance states the related federal rule directly: "A non-lawyer may not represent an individual or sign pleadings on the individual's behalf." Seventh Circuit Practitioner's Handbook for Appeals 37 (2026) (citing *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829 (7th Cir. 1986)).[4] But it does not follow that every supportive act by a friend is illegal. Ordinary non-representational assistance, such as helping organize facts, gather documents, proofread, print, translate, find public forms, use accessibility tools, or locate public information, is different from appearing, signing, holding out, or exercising legal judgment for another.

This tool-neutral boundary is important. A contrary rule would be impossible to contain. Is a litigant forbidden to use a public article because it may have been written with AI assistance? A legal template? A search result? A browser summary? A grammar correction? A friend's explanation that was itself informed by an AI query? Modern information streams cannot be divided cleanly into AI-free and AI-contaminated sources. The law should focus on conduct that matters: who undertook representation, who exercised final judgment, who made representations to the Court, and whether those representations were accurate and made after reasonable inquiry.

---

[3]Ill. Cts., *How the ARDC tackles the Unauthorized Practice of Law* (Sept. 27, 2017), `https://www.illinoiscourts.gov/News/847/How-the-ARDC-tackles-the-Unauthorized-Practice-of-Law/news-detail/`.

[4]`https://www.ca7.uscourts.gov/rules-procedures/Handbook.pdf`.

## III. Courts can police bad filings without creating an AI-origin inquiry.

The Court has ample tools to address the harms that matter. Rule 11 requires both represented and unrepresented litigants to certify that legal contentions are warranted and factual contentions have evidentiary support after an inquiry reasonable under the circumstances. Fed. R. Civ. P. 11(b)(2)–(3). Courts can strike filings, order correction of false citations, require verification of cited authorities, award sanctions for bad faith or objectively unreasonable conduct, enforce protective orders, manage confidentiality, and address abusive litigation in the case where it occurs.

These tools police the filing, not the private research path that led to it. That is administrable and fair. By contrast, an AI-origin regime would be both overinclusive and underinclusive. It would catch truthful, useful, human-reviewed work merely because AI helped draft or organize it, while missing bad work laundered through paraphrase, manual editing, or undetectable tools.

Technical evidence counsels against detector-based enforcement. Stanford HAI reported that AI detectors misclassified a large share of non-native English TOEFL essays as AI-generated and cautioned that detectors were unreliable and easy to game.[5] NIST's synthetic-content report likewise treats provenance, watermarking, labeling, detection, testing, and auditing as technical approaches requiring ongoing standards and risk management. NIST cautions that digital-content transparency may contribute to trustworthiness but does not guarantee it, and that the efficacy of many technical approaches has not yet been fully examined.[6] That makes detector-based courtroom enforcement a poor fit.

A categorical anti-AI rule would also create perverse incentives. It would not stop AI-assisted legal work. It would drive that work underground and reward users who conceal assistance. Given the technical evidence that detectors are unreliable and easy to game, it would also risk encouraging tools and workflows optimized to evade detection rather than improve accuracy, citation checking, and user accountability. Courts should prefer incentives that encourage candor, verification, and responsibility.

## IV. Access-to-courts concerns counsel against expanding UPL to ordinary AI-assisted self-help.

This case does not require the Court to decide the full constitutional scope of non-lawyer assistance. The Supreme Court's access-to-courts cases in the prison context, including *Johnson v. Avery*, 393 U.S. 483 (1969), and *Bounds v. Smith*, 430 U.S. 817 (1977), arose in a distinct setting and do not create a general right for non-lawyers to represent others in civil

---

[5]Stanford HAI, *AI-Detectors Biased Against Non-Native English Writers* (May 15, 2023), `https://hai.stanford.edu/news/ai-detectors-biased-against-non-native-english-writers`; Weixin Liang et al., *GPT Detectors are Biased Against Non-native English Writers*, arXiv:2304.02819 (2023), `https://arxiv.org/abs/2304.02819`.

[6]NIST AI 100-4, *Reducing Risks Posed by Synthetic Content: An Overview of Technical Approaches to Digital Content Transparency* 1–3 (Nov. 2024), `https://www.nist.gov/publications/reducing-risks-posed-synthetic-content-overview-technical-approaches-digital-content`.

litigation. But they do reflect a principle relevant here: access to courts can be impaired when people without counsel are cut off from practical means of preparing meaningful legal papers. See *Johnson*, 393 U.S. at 487–90; *Bounds*, 430 U.S. at 828.

A broad UPL theory aimed at AI tools would create that risk for modern court users. It would burden people who rely on AI to research, draft, organize, translate, check citations, reduce cognitive load, make legal materials more accessible, or verify their own work. Those users still must tell the truth and comply with procedural rules. But the Constitution and sound judicial administration favor rules that preserve meaningful access while holding litigants responsible for what they file.

This Court can avoid those constitutional and practical problems by declining to treat ordinary user-directed AI assistance as unauthorized practice of law by the tool provider. That approach leaves room for real UPL enforcement where a human or entity undertakes representation, holds itself out as counsel, sells legal services unlawfully, or exercises legal judgment for another. It also leaves room for case-specific sanctions when a litigant files false, frivolous, or abusive papers. What it avoids is converting usefulness for legal work into the legal practice of law.

## Conclusion

Plaintiff's broad theory would not make litigation more honest or more fair. It would make AI use less transparent, deepen the gap between represented and unrepresented parties, and invite courts into an unworkable inquiry into the hidden provenance of every sentence a litigant files. The better rule is the one already reflected in Rule 11, the Illinois Supreme Court's AI policy, and the Seventh Circuit's guidance in *Jones*: hold the human filer responsible for accuracy, candor, and reasonable inquiry, while recognizing that lawful AI-assisted self-help is not the same thing as unauthorized legal practice by the tool provider.

For these reasons, the Court should grant leave to file this brief and should grant Defendants' Motion to Dismiss.

Dated: May 29, 2026

/s/ Michael Spece
Dr. Michael Spece
Amicus Curiae
8917 River Rd 7
North Bergen, NJ 07047
Telephone: 212-CONSULT (212-266-7858)
Email: Michael@Spece.AI

## CERTIFICATE OF SERVICE

I certify that on May 29, 2026, I served the foregoing Motion of Dr. Michael Spece for Leave to File Brief as Amicus Curiae in Support of Defendants' Motion to Dismiss, including the attached proposed amicus brief, by electronic mail on counsel of record:

- Justin Wax Jacobs, counsel for Plaintiff Nippon Life Insurance Company of America, J-WaxJacobs@nipponlifebenefits.com.

- David G. Jorgensen, counsel for Plaintiff Nippon Life Insurance Company of America, djorgensen@crokefairchild.com.

- Steven P. Mandell, counsel for Defendants OpenAI Foundation and OpenAI Group PBC, smandell@mandellpc.com.

- John P. Flynn, counsel for Defendants OpenAI Foundation and OpenAI Group PBC, jflynn@wsgr.com.

- Joshua A. Baskin, counsel for Defendants OpenAI Foundation and OpenAI Group PBC, jbaskin@wsgr.com.

Dated: May 29, 2026

/s/ Michael Spece
Dr. Michael Spece
Proposed Amicus Curiae
8917 River Rd 7
North Bergen, NJ 07047
Telephone: 212-CONSULT (212-266-7858)
Email: Michael@Spece.AI

9