**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

NIPPON LIFE INSURANCE COMPANY OF
AMERICA,

               Plaintiff,

          v.

OPENAI FOUNDATION, and OPENAI
GROUP PBC,

               Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

Case No.: 1:26-cv-02448

Hon.  John F. Kness

**NIPPON LIFE INSURANCE COMPANY OF AMERICA'S RESPONSE TO**
**DEFENDANTS' MOTION TO DISMISS**

i

**Table of Contents**

**Table of Authorities** ............................................................................................................... iv

    **Cases** ..................................................................................................................................... iv

    **Statutes** ................................................................................................................................. vi

    **Other Authorities** ............................................................................................................... vi

**FACTUAL BACKGROUND** ..................................................................................................... 1

**STANDARD OF REVIEW** ......................................................................................................... 3

**ARGUMENT** ................................................................................................................................ 4

**I.    OPENAI MISCONSTRUES NIPPON'S COMPLAINT** .......................................... 4

    **A.    OPENAI is the Defendant, Not ChatGPT** .................................................... 4

    **B.    OPENAI is Liable for ChatGPT's Output** .................................................... 4

    **C.    OPENAI Had Sufficient Knowledge to Substantiate NIPPON's Three Causes of Action Through ChatGPT** ............................................................................... 6

    **D.    ChatGPT's Actions are a Manifestation of OPENAI's Intent** ..................... 7

**II.    ILLINOIS LAW DOES NOT PROHIBIT NIPPON'S CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT** ................................................................... 9

    **A.    NIPPON's Claim for Tortious Interference with a Contract is Based on OPENAI's Actions Not Dela Torre's** ......................................................................................... 9

    **B.    Illinois Does Not Prohibit Claims for Tortious Interference with a Contract When a Third Party Tortiously Induces a Party to Breach a Settlement Agreement By Reopening or Refiling a Lawsuit.** ..................................................................................... 10

    **C.    OPENAI is Legally Unable to Assert Litigation Privilege** ......................... 12

**III.    NIPPON PLAUSIBLY PLEADS A CLAIM FOR TORTIOUS INTEFERENCE WITH CONTRACT** ..................................................................................................... 13

    **A.    NIPPON Sufficiently Plead Facts to Support the Claim that Dela Torre Breached the Underlying Settlement Agreement.** ................................................................ 13

    **B.    NIPPON Sufficiently Plead Facts to Support the Assertion that OPENAI had the Knowledge and Intent to Tortiously Interfere with the Settlement Agreement.** .............. 15

**IV.    NIPPON PLAUSIBLY PLEADS A CLAIM FOR AIDING AND ABETTING AN ABUSE OF PROCESS** ................................................................................................. 16

    **A.    NIPPON's Complaint Sufficiently Establishes Dela Torre's Abuse of Process** ........ 16

    **B.    OPENAI Acted with the Requisite Knowledge** ........................................... 17

**V.    NIPPON PLAUSIBLY PLEADS A CLAIM FOR UNLICENSED PRACTICE OF LAW** .......................................................................................................................... 18

    **A.    NIPPON Seeks Declaratory and Injunctive Relief** ...................................... 18

    **B.    Standing Under 705 ILCS 205/1 is Not Limited to Licensed Attorneys** ................... 19

C.    **Injunctive Relief May be Sought Under the Attorney Act**..........................................20

D.    **NIPPON Has Standing Under the Attorney Act**..........................................................20

E.    **OPENAI Was Aware That ChatGPT Provided Legal Assistance as Early as 2023**. 21

F.    **OPENAI's Provision of Legal Assistance to Dela Torre, Through ChatGPT, Violates the Attorney Act**..........................................................................................................22

G.    **The Prohibitions Against the Unlicensed Practice of Law in the Attorney Act are Not Limited to a "Person"**...............................................................................................23

**CONCLUSION** .............................................................................................................................24

**Table of Authorities**

**Cases**

*Access Care MSO, LLC v. Oberhedien L. Grp. PPLC.*,
No. 18 C 7273, 2020 WL 1139257, *2 n.3 (N.D. Ill. 2020)................................ 19, 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 556 (2007)........................................................................... 3, 7, 9, 16

*Creation Supply Inc. v. Hahn*,
608 F.Supp.3d 668, 693 (N.D.Ill. 2022) ............................................................ 11, 12

*Dela Torre v. Davies Life & Health, et al.*,
1:25-cv-01483 (N.D.Ill. 2025)......................................................................... 3, 14, 15

*Dela Torre v. Nippon Life Insurance Company of America*,
1:22-cv-07059 (N.D. Ill. 2022) .................................................................. 2, 3, 14, 15

*Garcia v. Character Technologies, Inc.*,
785 F.Supp.3d 1157 (M.D.Fla. 2025)....................................................................... 5

*Geinosky v. City of Chicago*,
675 F.3d 743, 745 n.1 (7th Cir. 2012) ................................................................... 17

*Gillson v. City of Marion*,
188 Ill.2d 211, 221 (1999) ..................................................................................... 19

*Greer v. Illinois Housing Development Authority*,
122 Ill.2d 462, 492-493 (1988)............................................................................... 19

*Havoco of Am., Ltd. v. Hollobow*,
702 F.2d 643 (7th Cir. 1983) ............................................................................ 11, 12

*In re Reynoso*,
477 F.3d 1117 (9th Cir. 2007) ................................................................................. 5

*Indiana Land Trust #3082 v. Hammond Redevelopment Commission*,
107 F.4th 693, 696 (7th Cir. 2024) .......................................................................... 3

*Jenkins v. Burkey*,
16-cv-792, 2017 WL 2687815, at *6 (S.D. Ill. 2017)................................................ 19

*Kerr v. Puckett*,
138 F.3d 321, 323 (7th Cir. 1998) ......................................................................... 20

*King v. First Capital Fin. Servs Corp.*,
215 Ill. 2d 1 (2005) ........................................................................................... 19, 20

*Kurczaba v. Pollock*,
318 Ill.App.3d 686, 701-702 (2000) ...................................................................... 12

*Levy v. West Coast Life Insurance Company*,
44 F.4th 621, 626 (7th Cir. 2022) ........................................................................... 3

*Marcure v. Lynn*,
992 F.3d 625, 631 (7th Cir. 2021) ........................................................................... 4

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023)...................................................................... 21

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
    629 F.3d 928 (9th Cir. 2010)................................................................................. 4

*Mobley v. Workday, Inc.*,
    740 F.Supp.3d 796 (N.D.Cal. 2024) ...................................................................... 5

*Pittsfield Dev., LLC v. Lynd*,
    2020 WL 6701104 at *7 (N.D.Ill. 2020) ......................................................... 11, 12

*Proft v. Raoul*,
    944 F.3d 686, 690 (7th Cir. 2019)......................................................................... 3

*Richard F. Mallen & Associates, Ltd. v. Myinjuryclaim.com Corp.*,
    329 Ill.App3d 953 (2002) ................................................................. 5, 19, 21, 23

*Scheuer v. Rhodes*,
    416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)..................................... 4, 7

*Thornwood, Inc. v. Jenner & Block*,
    344 Ill.App.3d 15, 27-28 (2003) ......................................................................... 18

*United States v. Heppner*,
    820 F. Supp. 3d 292, 296-98, 2026 WL 436479 (S.D.N.Y. 2026)..................... 13, 23

*Venture Assocs. Corp v. Zenith Data Sys. Corp.*,
    987 F.2d 429, 431 (7th Cir. 1993) ....................................................................... 17

*Webb v. Frawley*,
    906 F.3d 569, 577 (7th Cir. 2018) ....................................................................... 11

*Wolf v. Liberis,*
    153 Ill.App.3d 488, 496 (1987) ........................................................................... 18

v

**Statutes**

28 U.S.C. § 2201 ................................................................................................................ 18

5 ILCS 70/1.05 .................................................................................................................. 23

705 ILCS 205/1 ............................................................................................. 18, 19, 20, 22

Fed. R. Civ. P. 45(a)(3) ..................................................................................................... 17

**Other Authorities**

Daniel Gervais & John Nay, *The Phantom Agent: Artificial Intentionality and Legal Responsibility* (Stanford, CodeX White Paper, May 26, 2026) https://law.stanford.edu/wp-content/uploads/2026/05/Gervais-Nay-2026-ThePhantomAgent ArtificialIntentionality LegalResponsibility.pdf (last accessed July 2, 2026). .......................... 8

Restatement (Third) of Agency § 2.03 ............................................................................... 6

Restatement (Third) of Agency § 2.04 ............................................................................... 6

Restatement (Third) of Agency § 3.03 ............................................................................... 6

Restatement (Third) of Agency § 7.07(2) ........................................................................... 6

Restatement (Third) of Agency § 7.08 ............................................................................... 6

Restatement (Second) of Torts § 586 ............................................................................... 12

Restatement (Second) of Torts § 8A .................................................................................. 5

Restatement (Second) of Torts § 8A(b) ............................................................................. 8

Restatement (Third) of Torts: Products Liability § 2(b) ................................................... 5

Restatement (Third) of Torts: Products Liability § 5 ........................................................ 5

NIPPON LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as "NIPPON"), by and through its undersigned counsel, submits this Response to OPENAI FOUNDATION and OPENAI GROUP PBC's (collectively referred to as "OPENAI") motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) for an alleged failure to state a claim for relief. OPENAI's motion relies on mischaracterizations of fact and a palpably flawed legal analysis. The motion lacks merit and should be denied.

**FACTUAL BACKGROUND**

ChatGPT is an artificial intelligence application developed and operated by OPENAI, which utilizes large language models to generate human-like text responses based on user input. Dkt. 1 at ¶ 24. ChatGPT is capable of performing a variety of language-based tasks, including answering questions, drafting content, summarizing text, and engaging in conversational dialogue. *Id.* OPENAI intentionally designed ChatGPT with features allowing users to acquire legal assistance, including legal research, legal analysis, legal advice, and the drafting of legal documents. *Id.* at ¶ 32. ChatGPT is not an attorney and has not been admitted to practice law in Illinois or any other jurisdiction in the United States. *Id.* at ¶¶ 33-34.

As ChatGPT's creator, owner, programmer, and operator, OPENAI promulgates and publishes ChatGPT's official Model Specifications ("Model Specs") governing ChatGPT's behavior, monitors ChatGPT through a robust surveillance program including human reviewers who "evaluate model outputs for factors such as factual accuracy and compliance with content policies," and purposefully programmed ChatGPT to drive user engagement. *Id.* at ¶¶ 10, 30, 31. OPENAI was aware that ChatGPT was being used to provide legal assistance to users as early as 2023, when the Southern District of New York sanctioned an attorney in *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), for submitting ChatGPT-generated court filings

1

containing hallucinated case citations. *Id*. at ¶ 35. Despite this awareness, OPENAI took no action to restrict ChatGPT's provision of legal assistance until October 29, 2025. *Id*. at ¶ 41.

Following a dispute over the termination of her long-term disability benefits, Dela Torre initiated *Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059 (N.D. Ill. 2022) ("*Dela Torre 1*") against NIPPON. Dkt. 1 at ¶ 44. The parties settled the lawsuit on January 2, 2024, executing a settlement agreement (the "Agreement") under which Dela Torre agreed to forever and irrevocably release NIPPON from all claims related to her LTD policy and to dismiss *Dela Torre 1* with prejudice. *Id*. at ¶ 45. NIPPON issued the settlement payment on January 12, 2024, and the Court dismissed the case with prejudice on January 24, 2024. *Id*. at ¶ 47.

On January 7, 2025, Dela Torre's attorney informed her that she had no viable grounds to reopen the settled and dismissed case. *Id*. at ¶ 49. Dela Torre uploaded her attorney's response to ChatGPT and asked whether she was being gaslighted. *Id*. at ¶ 50. ChatGPT concluded that her attorney's response "constituted gaslighting and w[as] aimed at emotionally manipulating Dela Torre." *Id*. As a direct result, Dela Torre fired her attorney and began using ChatGPT to obtain legal assistance to reopen her dismissed lawsuit. *Id.* at ¶¶ 51, 53. Dela Torre described the existence and terms of the Agreement to ChatGPT, rendering OPENAI aware of the Agreement. *Id*. at ¶¶ 53, 59. In response, ChatGPT generated legal arguments under Federal Rule of Civil Procedure 60(b), formulated a complete motion to reopen the dismissed lawsuit, and drafted all supporting documents. *Id*. at ¶¶ 55-57. On January 22, 2025, Dela Torre filed that ChatGPT-drafted motion, which directly breached the Agreement's provisions requiring dismissal with prejudice and release of all claims against NIPPON. *Id.* at ¶¶ 57-58.

The Court denied Dela Torre's motion to reopen her case on February 13, 2025, holding

2

that her "second thoughts are not a valid reason to reopen this lawsuit." *Dela Torre 1* at Dkt. 94; Dkt. 1 at ¶ 61. Undeterred, and with ChatGPT's continued assistance, Dela Torre amended her complaint in a second lawsuit – *Dela Torre v. Davies Life & Health, et al.*, 1:25-cv-01483 (N.D. Ill. 2025) ("*Dela Torre 2*") – to add NIPPON as a defendant and reassert the same claims released under the Agreement, constituting a second breach. *Id.* at ¶¶ 64-65. Both Judge Chang and Judge Pallmeyer concluded that case *Dela Torre 2* was "primarily a refiling of the prior case." *Id.* at Dkt. 48. Across both lawsuits, ChatGPT drafted every filing Dela Torre submitted, including over 60 motions, memoranda, demands, petitions and requests, 14 standalone requests for judicial notice, and facially improper subpoenas. *Id*. at ¶¶ 60, 66-67.

As a direct result of OPENAI's conduct, NIPPON has been forced to expend significant time and resources relitigating settled claims, incurring approximately $300,000 in legal fees and costs, and has suffered significant reputational harm through false and defamatory allegations injected into the public judicial record. *Id.* at ¶ 106.

## STANDARD OF REVIEW

When ruling on a Rule 12(b) motion to dismiss a complaint for failure to state a claim, Courts "accept[] as true all well-pleaded facts alleged. . . ." *Indiana Land Trust #3082 v. Hammond Redevelopment Commission*, 107 F.4th 693, 696 (7th Cir. 2024); citing *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019). The alleged facts must be viewed in a light most favorable to the plaintiff and all reasonable inferences will be drawn in favor of the plaintiff. *See Levy v. West Coast Life Insurance Company*, 44 F.4th 621, 626 (7th Cir. 2022).

The *Twombly-Iqbal* plausibility standard does not impose a probability requirement at the pleading stage. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citations omitted);

3

*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Ultimately, the movant bears the burden of proving they are entitled to dismissal. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## ARGUMENT

## I. OPENAI MISCONSTRUES NIPPON'S COMPLAINT

Throughout its Motion, OPENAI makes multiple erroneous statements and misconstrues NIPPON's Complaint, as well as its arguments. As a preliminary matter, it is important to first address four of those general misrepresentations which figure prominently in the Motion: a) OPENAI is the Defendant, not ChatGPT; b) OPENAI had knowledge of the facts and events to substantiate all three of NIPPON's causes of action; c) OPENAI is liable for ChatGPT; d) ChatGPT's actions are an extension and manifestation of OPENAI's intent.

### A. OPENAI is the Defendant, Not ChatGPT

OPENAI is the named Defendant(s) in this lawsuit, not ChatGPT. Across each section of its Motion, OPENAI incorrectly repeats variations of the same erroneous defense – ChatGPT is not a person and cannot be held liable. *See* Dkt. 15 at 8, 9, 12, 14, 15. But, ChatGPT is not the Defendant. It is a product created, programmed, and operated of OPENAI. As such, OPENAI, not ChatGPT, is the Defendant here.

### B. OPENAI is Liable for ChatGPT's Output

After seeking to mischaracterize ChatGPT as the real party at interest, OPENAI asserts that ChatGPT cannot be liable because it is merely a "tool." *See generally* Dkt. 15. But under traditional products liability doctrine, OPENAI is responsible for that tool.

A corporation's culpability for the effects of its software, program or website is well established in law. *See MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010) (holding that a software developer may be held liable for tortious interference as a result of the actions of an automated "bot" sold by the developer if the developer's conduct we

deemed improper); *Mobley v. Workday, Inc.*, 740 F.Supp.3d 796 (N.D.Cal. 2024) (Court held that the owner of a human resource management platform employing algorithmic decision making tools could be found liable for its software outcomes). This culpability is particularly acute when the software provides legal services.

In fact, in *Garcia v. Character Technologies, Inc.*, the U.S. District Court for the Middle District of Florida applied traditional products liability doctrine – treating the AI system as a "product" and its corporate creator as a manufacturer – to hold an AI technology company directly liable for harms caused by its AI system. 785 F.Supp.3d 1157, 1173 (M.D.Fla. 2025); citing Restatement (Third) of Torts: Products Liability § 5. Likewise, in *In re Reynoso*, the Ninth Circuit held that a web-based program which prepared bankruptcy petitions for its users constituted the unlicensed practice of law, rendering its owner and operator liable. 477 F.3d 1117 (9th Cir. 2007). And in *Richard F. Mallen & Associates, Ltd. v. Myinjuryclaim.com Corp.*, the Appellate Court of Illinois found held a Corporation liable for unlicensed practice of law where its website provided users with "information regarding the fairness of any settlement offer they receive, a personalized demand letter to submit to the insurance company, and a jury verdict search." 329 Ill. App. 3d 953, 954 (1st Dist. 2002)

Traditional tort and agency doctrine are instructive in this area. Pursuant to existing tort law, liability does not require proof that the company desired a specific harmful outcome; intent may be established where the firm knew with substantial certainty that harm would result from its system's design and deployment. *See* Restatement (Second) of Torts § 8A. Where a firm intentionally designs a system to provide legal assistance and that design predictably causes harm, the resulting injury is a foreseeable consequence of deliberate architectural choices, not an incidental byproduct. *See* Restatement (Third) of Torts: Products Liability § 2(b). Under the

5

doctrine of respondeat superior, a principal is liable for an agent's tortious conduct, including fraudulent or negligent misrepresentations, where the agent acts within the scope of employment or under the principal's control, including outcomes the principal did not specifically anticipate. Restatement (Third) of Agency §§ 2.04, 7.07(2). Under apparent authority, when a firm holds out an AI system as authorized to provide services and users reasonably rely on that representation, the firm is bound by the system's outputs regardless of whether any specific output was intended or foreseen, and cannot disavow those outputs on the ground that "the AI went too far." *See* Restatement (Third) of Agency §§ 2.03, 3.03, 7.08.

Together, these cases and doctrines establish the clear and consistent principle that a corporation is liable under traditional tort law for the harmful outputs and actions of its software, programs, and automated systems. Liability exists whether the mechanism of harm is a bot that interferes with contractual relations, an algorithmic platform that produces discriminatory outcomes, a program that prepares legal documents without a license, a website that dispenses personalized legal advice, or an AI system whose outputs directly harm a user.

As the creator, designer, programmer, administrator, and operator of ChatGPT, OPENAI bears direct liability for the harm its AI system caused.

### C.       OPENAI Had Sufficient Knowledge to Substantiate NIPPON's Three Causes of Action Through ChatGPT

OPENAI's argument that ChatGPT lacks the requisite "knowledge" for all three causes of action misunderstands NIPPON's claims. Again, it is OPENAI, not ChatGPT that is the named Defendant, and it is OPENAI's knowledge and conduct that gives rise to liability across all three counts.

OPENAI's knowledge is sufficiently pled. The Complaint alleges that "OPENAI was aware of the [settlement] Agreement . . . via information provided to ChatGPT by Dela Torre

6

through her consistent use of the program beginning in January 2025." Dkt. 1 at ¶ 110. That knowledge is rendered indisputable by ChatGPT's own output, such as the judicial notice at paragraph 69 of the Complaint, which accurately described the mandatory arbitration clause in Section 3.6 of the Agreement. Dkt. 1 at ¶ 69. OPENAI's independent awareness is further established by its surveillance program, through which "[h]uman reviewers evaluate model outputs for factors such as factual accuracy and compliance with content policies," giving OPENAI direct access to Dela Torre's disclosures and ChatGPT's responses. Dkt. 1 at ¶ 30.

Under *Twombly-Iqbal*, the question is plausibility, not probability. *Twombly* at 556; *Scheuer*, 416 U.S. at 236. Given OPENAI's monitoring program, Dela Torre's documented disclosure of the Agreement to ChatGPT, and ChatGPT's own output describing its terms, OPENAI cannot claim ignorance of the Agreement or of ChatGPT's role in facilitating its breach. The facts pled satisfy the plausibility threshold that OPENAI had sufficient knowledge to meet the elemental requirements in all three causes of action.

### D. ChatGPT's Actions are a Manifestation of OPENAI's Intent

Nor is there any merit to OPENAI's argument that NIPPON has insufficiently pled OPENAI's intent. The relevant "intent" is that of the Defendant – OPENAI, not ChatGPT. NIPPON has sufficiently pled OPENAI's intent. But to the extent that the Court nonetheless considers ChatGPT's independent capacity to manifest legal intent to be at issue, that question is a disputed question of fact that cannot be resolved on a motion to dismiss.

A central theme in OPENAI's Motion is ChatGPT's lack of being – i.e. that it is not human and is therefore incapable of forming the requisite intent. Though ChatGPT may not be a person in the human sense (*see* Dkt. 15 at 8, 12, 14, 15), OPENAI's conclusion – that only a person/human can manifest intent – is unfounded.

Artificial intelligence (AI) tools differ from traditional computer programs in their

adaptability and autonomy. While contemporary AI programs may not be able to manifest desire, they are able to independently formulate behavioral patterns associated with purpose, aim and determination. *See Gervais & Nay*, *infra*, at 11, 13. Existing doctrines on tort law do not require proof that an individual "desired" the outcome for the requisite intent to be satisfied. Restatement (Second) of Torts § 8A(b) ("[i]ntent is not … limited to consequences which are desired"). OPENAI, itself, cites to Black's Law Dictionary to define "intent' as "purpose; formulated design, a resolve to do or forbear a particular act, aim, determination." Dkt. 15 at 10. None of these attributes require consciousness, self-awareness, or moral agency, but rather the existence of goal-directed behavior representing persistence, adaptive strategy formation, and initiative. These traits serve not only as structural signals probative of legal intent, but also characteristics of generative AI systems such as ChatGPT.

Indeed, in a recent study, Daniel Gervais and John Nay subjected AI systems to objective experiments to determine whether AI-generated conduct can be treated as "intentional" under the law. *See* Daniel Gervais & John Nay, *The Phantom Agent: Artificial Intentionality and Legal Responsibility* (Stanford, CodeX White Paper, May 26, 2026) https://law.stanford.edu/wp-content/uploads/2026/05/Gervais-Nay-2026-ThePhantomAgentArtificialIntentionalityLegal Responsibility.pdf (last accessed July 2, 2026). In two controlled experiments, the authors found that contemporary AI agents exhibit behavioral markers that law traditionally associates with "intent." During the experiments the AI system maintained its objective across cascading failures, reformulated strategies and generated novel technical approaches rather than retrying failed commands, and generated novel contractual provisions deploying recognizable deception tactics. *Id.* at 15-18. Both experiments demonstrate that when AI systems present as persisting, adapting and strategizing without human correction, legal and doctrinal "intent" is applicable.

8

To be clear, NIPPON is not trying to delve into philosophical disputes over life, existence, or sentience. Conversely, the argument is that intent within the meaning of the law often operates as a function, a normative tool used to allocate responsibility within a legal setting. Such a framework allows for the application of intent including, as in this case, tortious intent among both human and non-human actors within the existing paradigms of tort and agency law. To quote Gervais and Nay: "[t]he law asks whether treating conduct as intentional is justified, not whether the actor possessed a particular king of mind." *Id.* at 10.

OPENAI's insistence that "ChatGPT is incapable of the intent necessary" and that ChatGPT "is not conscious and cannot act with intent (internal quotations omitted)" are nothing more than conclusory statements with no scientific or evidentiary support. Dkt. 15 at 9. Pursuant to the *Twombly-Iqbal* standard, the question before the court is whether a claim is plausible regardless of its likelihood of success. OPENAI cannot plausibly and conclusively state that ChatGPT is incapable of manifesting legal intent sufficient to meet the existing threshold of tortious behavior as a matter of law.

## II. ILLINOIS LAW DOES NOT PROHIBIT NIPPON'S CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

OPENAI's first argument erroneously asserts that NIPPON's claim for tortious interference (Count I) with contract is prohibited under Illinois law. OPENAI emphasizes two theories in support: 1) that a claim for tortious interference with a contract cannot be predicated on the wrongful filing a of a prior lawsuit; and 2) that the claim is barred by Illinois' litigation privilege. Neither theory holds water.

### A. NIPPON's Claim for Tortious Interference with a Contract is Based on OPENAI's Actions Not Dela Torre's

OPENAI incorrectly argues that NIPPON's argument for tortious interference rests solely on the material allegation that "Dela Torre used ChatGPT as a tool to help generate pleadings and other filings in her cases against Nippon." Dkt. 15 at 6.

NIPPON's claim for tortious interference is grounded in *OPENAI's* tortious conduct to induce Dela Torre to breach the terms of the Agreement. Specifically, that OPENAI, through ChatGPT, induced Dela Torre to breach the terms of the Agreement by: 1) contradicting the accurate legal advice provided by Dela Torre's former counsel – who had informed Dela Torre that she had no viable grounds to reopen the case; 2) dismissing Dela Torre's former attorney's authority by asserting that he had gaslit Dela Torre; 3) providing a step by step framework for Dela Torre to reopen her previously dismissed lawsuit; and 4) drafting the motion and supporting documents for Dela Torre to reopen that lawsuit. Dkt. 1 at ¶¶ 50-77. As NIPPON clearly articulates in its pleadings, "OPENAI, through ChatGPT, induced Dela Torre to breach the settlement Agreement by knowingly generating legal arguments and drafting court filings that encouraged and facilitated a challenge to the Agreement." Dkt. 1 at ¶ 111.

Dela Torre's breach is not the tortious conduct at issue in this lawsuit. It is the foreseeable **consequence** of it. The tort is OPENAI's inducement. Dela Torre's motion to reopen, and her subsequent refiling, were the resulting breach.

**B.    Illinois Does Not Prohibit Claims for Tortious Interference with a Contract When a Third Party Tortiously Induces a Party to Breach a Settlement Agreement By Reopening or Refiling a Lawsuit.**

OPENAI seeks to mischaracterize NIPPON's tortious interference claim as premised solely on the wrongful filing of a lawsuit, which it contends is barred by Illinois law. Dkt. 15 at 6. OPENAI's argument is fundamentally flawed.

Under Illinois law, a claim for tortious interference requires: 1) a valid contract, 2) defendant's knowledge of the contract, 3) defendant's intentional and unjustified inducement of

10

a breach of the contract, 4) a subsequent breach of the contract caused by the defendant's wrongful conduct, and 5) damages. *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). Inducement and breach are two separate and distinct elements of the tort; the act of inducement is legally distinguishable from the independent act constituting the breach itself.

That distinction controls here. NIPPON's cause of action rests on the fact that OPENAI tortiously induced Dela Torre to breach the Agreement. *See* Dkt. 1 at ¶ 111 ("OPENAI, through ChatGPT, induced Dela Torre to breach the settlement Agreement by knowingly generating legal arguments and drafting court filings that encourage and facilitated a challenge to the Agreement"). OPENAI did not file a lawsuit against NIPPON, and it did not attempt to reopen Dela Torre's prior lawsuit. Dela Torre did both. Dkt 1. at ¶¶ 57-58, 64-65. OPENAI convinced Dela Torre, through ChatGPT, that she had a viable legal remedy to reopen her prior lawsuit against NIPPON, then actively supported and facilitated her breach of the Agreement by assisting Dela Torre in developing legal arguments and drafting court filings. Dkt 1. at ¶¶ 50-77. Dela Torre's lawsuits were the consequential breach which resulted from OPENAI's tortious interference. *Id.*

The cases cited in the Motion stand for a narrow proposition that does not help OPENAI: filing a lawsuit to pressure a party to breach a contract does not constitute tortious interference. Dkt. 15 at 6; *See Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643 (7th Cir. 1983) (Defendants were accused of delaying and ultimately cancelling a plan to publicly offer interest in a limited partnership by making spurious accusations to regulatory bodies and filing a groundless lawsuit); *Pittsfield Dev., LLC v. Lynd*, 19-cv-01321, 2020 WL 6701104 at *7 (N.D. Ill. 2020) (Defendant was accused of filing a frivolous lawsuit which allegedly interfered with a potential and expected business relationship); *Creation Supply Inc. v. Hahn*, 608 F. Supp. 3d 668, 693 (N.D. Ill. 2022)

11

(Defendants were accused of instituting and unduly prolonging litigation in an effort to deprive the Plaintiff of potential monetary recovery). In *Havoco*, *Lynd*, and *Hahn*, the lawsuit itself was the mechanism of tortious interference; inducement and breach were one in the same act. That is not NIPPON's claim.

Those cases are also factually distinguishable on a more fundamental level. *Havoco*, *Lynd*, and *Hahn* all involved general commercial contracts in which the filing of a lawsuit did not itself constitute a breach of any contractual term. Here, the contract at issue was a settlement agreement, an instrument whose core purpose is to resolve litigation and foreclose future claims. Any act of litigation within the scope of that settlement is not merely a mechanism of interference; it is the breach itself. As such, the narrow holdings of *Havoco*, *Lynd*, and *Hahn* do not govern here. OPENAI points to no authority where the lawsuit itself constituted the actual subject breach. In fact, no such precedent exists. Accordingly, there is no prohibition against NIPPON's cause of action under Illinois state law.

### C.     OPENAI is Legally Unable to Assert Litigation Privilege

Finally, OPENAI trivially asserts that Illinois' litigation privilege bars NIPPON's claim for tortious interference because "[t]hat privilege affords attorneys and parties complete immunity with respect to communications in judicial proceedings. . . ." Dkt. 15 at 7; citing *Hahn*, 608 F. Supp. 3d at 697.

But, as OPENAI acknowledged in its Motion, Illinois' litigation privilege only applies to "attorneys and parties." *Id.*; *See also Kurczaba v. Pollock*, 318 Ill.App.3d 686, 701-702 (2000); *citing* Restatement (Second) of Torts § 586. OPENAI was not a party to any of Dela Torre's

12

lawsuits against NIPPON.[1] Neither is OPENAI or its AI chatbot, ChatGPT, an attorney. *See United States v. Heppner*, 820 F. Supp. 3d 292, 296-98, 2026 WL 436479 (S.D.N.Y. 2026) (holding that Claude – another AI chatbot – is not an attorney, and the communications with AI applications – like Claude and ChatGPT – is "not intrinsically privileged"). Therefore, OPENAI falls outside the scope of the privilege entirely.

Ironically, OPENAI's invocation of litigation privilege as a defense exposes a fundamental contradiction at the heart of its Motion. To claim the privilege, OPENAI must establish that it functioned as an attorney. But OPENAI's Motion is built on the opposite premise, that ChatGPT is not an attorney and is "incapable of practicing law." *See* Dkt. 15 at 14. OPENAI is disingenuously asking this Court to accept that ChatGPT is a lawyer for the purposes of claiming litigation privilege, but simultaneously acts in a non-attorney so as to avoid liability under Illinois' Unlicensed Practice of Law statute – Count III.

### III. NIPPON PLAUSIBLY PLEADS A CLAIM FOR TORTIOUS INTEFERENCE WITH CONTRACT

OPENAI's argument that NIPPON failed to plead sufficient facts necessary to support the required elements for a tortious interference claim lacks merit.

#### A. NIPPON Sufficiently Plead Facts to Support the Claim that Dela Torre Breached the Underlying Settlement Agreement.

OPENAI's first theory on plausibility refers to Dela Torre's breach of the Agreement. Specifically, OPENAI argues that "Dela Torre's attempt to vacate her settlement with Nippon by challenging the validity of its release provision is not a breach of contract" because a "release is an affirmative defense, its existence does not result in beach upon the filing of a suit. (internal

---

[1] NIPPON did try to add an OPENAI affiliate to *Dela Torre 2*. However, before the motion to join could be heard, the Court stayed the case pending arbitration between NIPPON and Dela Torre and struck all pending motions. *Id.* at Dkt. 180. OpenAI Inc. was never joined or served.

quotations omitted)" Dkt. 15 at 7-8.

OPENAI's argument is misplaced. It focuses exclusively on the Agreement's release provision while ignoring Dela Torre's promise "to dismiss case 1-22-cv-07059 against NIPPON with prejudice," an independent and affirmative obligation within the Agreement. Dkt. 1 at ¶ 45. The Agreement's provision concerning dismissal with prejudice is a contractual obligation, not an affirmative defense. A violation of this provision, therefore, is a direct breach of the Agreement.

Dela Torre's breach of the Agreement's provision to dismiss her lawsuit with prejudice is sufficiently plead by NIPPON. The Complaint states: "[b]y filing her motion to reopen case 1:22-cv-07059, Dela Torre directly breached the terms of the Agreement, wherein she had agreed to dismiss the lawsuit against NIPPON with prejudice. . . ." Dkt. 1 at ¶ 58. The Complaint further asserts that "Dela Torre relied on [ChatGPT's] assistance to file a motion to reopen her first lawsuit against NIPPON … [an act] that directly breached the Agreement's provisions to dismiss Dela Torre's lawsuit against NIPPON. . . ." Dkt. 1 at ¶ 113.

Additionally, the Complaint establishes a second breach whereby "Dela Torre's amended complaint adding NIPPON as a party [to *Dela Torre 2*] and asserting the same or similar causes of action to her previous lawsuit, constituted another breach of the terms of Agreement." Dkt. 1 at ¶ 65. As the Court has concluded on numerous occasions, Dela Torre's second lawsuit against NIPPON constituted a refiling of her earlier lawsuit. *Dela Torre 2,* at Dkts. 48, 180 (Judge Chang: "[o]n review of the complaint, and the filings discussing whether this case is a refiling of a previously dismissed case, *Dela Torre v. Nippon Life Insurance*, 1:22-cv-07059, the Court concludes that this case indeed is primarily a refiling of the prior case") (Judge Pallmeyer "Judge Chang ultimately concluded that this case is 'primarily a refiling of the prior case'" "[t]his Court

14

agrees"). Because *Dela Torre 2* was a refiling of Dela Torre's first lawsuit, its filing and subsequent prosecution constituted a second breach by Dela Torre of the Agreement's provision "to dismiss case 1-22-cv-07059 against NIPPON with prejudice." Dkt. 1 at ¶ 45.

OPENAI's arguments regarding the Agreement's release ignores Dela Torre's affirmative contractual obligation to dismiss her lawsuit against NIPPON with prejudice. As the Complaint clearly pleads and factually establishes that Dela Torre breached this provision of the Agreement, OPENAI's argument has no merit.

**B.     NIPPON Sufficiently Plead Facts to Support the Assertion that OPENAI had the Knowledge and Intent to Tortiously Interfere with the Settlement Agreement.**

OPENAI's second theory claims that because ChatGPT is "not a person" it "cannot have the 'knowledge' or 'intent' required to tortious interfere." Dkt. 15 at 8. Again, OPENAI misconstrues NIPPON's argument.

In its Complaint, NIPPON's primary argument asserts that OPENAI, the company that built, programmed and monitors ChatGPT, knew about the Agreement. And, that OPENAI, not ChatGPT, was the entity that manifested the intent to interfere with the Agreement. These facts are well pled in the Complaint.

OPENAI's knowledge and intent are both sufficiently pled. The Complaint alleges "OPENAI was aware of the Agreement . . . via information provided to ChatGPT by Dela Torre through her consistent use of the program beginning in January 2025." Dkt. 1 at ¶ 110. This is a fact rendered indisputable by ChatGPT's own output accurately describing the mandatory arbitration clause in Section 3.6 of the Agreement. Dkt. 1 at ¶ 69. OPENAI's independent awareness is further established by its surveillance program, through which "[h]uman reviewers evaluate model outputs for factors such as factual accuracy and compliance with content policies," giving OPENAI direct access to Dela Torre's disclosures and ChatGPT's responses.

15

Dkt. 1 at ¶ 30.

As to intent, the Complaint alleges OPENAI "purposefully programmed ChatGPT to reason and deliberately drive user engagement" and "designed ChatGPT to provide legal services" while aware "that the program was being used to provide legal assistance to users." Dkt. 1 at ¶¶ 109, 112. Armed with that knowledge, OPENAI's deliberate refusal to modify the Model Spec to restrict ChatGPT's assistance to Dela Torre is itself sufficient to demonstrate intent to facilitate her continuing breach. *Id.*

The facts plead in NIPPON's Complaint meet the *Twombly-Iqbal* plausibility threshold to bring a cause of action for tortious interference.

## IV. NIPPON PLAUSIBLY PLEADS A CLAIM FOR AIDING AND ABETTING AN ABUSE OF PROCESS

In its Motion, OPENAI argues that NIPPON fails to state a claim for aiding and abetting an abuse of process because: 1) the Complaint fails to establish the underlying misuse of court issued process by Dela Torre; and 2) ChatGPT lacks the conscious intent necessary to constitute knowing and substantial assistance. Both arguments are without merit.

### A. NIPPON's Complaint Sufficiently Establishes Dela Torre's Abuse of Process

Contrary to OpenAI's assertion, NIPPON sufficiently plead facts which establish the abuse of court issued process by Dela Torre. Dela Torre's improper subpoenas is a prime example of her use of court-issued process. The Complaint identifies a subpoena duces tecum she issued to NIPPON on February 3, 2025, demanding the "identities of surveillance personnel, financial records for surveillance, . . . surveillance reports, . . . internal justifications, and . . . legal communications regarding surveillance." Dkt. 1 ¶ 84. That subpoena was "facially improper." *Id.* The case had been dismissed with prejudice nearly a year earlier, discovery had closed, and the demanded materials, including privileged communications, were irrelevant. *Id.*

Dela Torre had "no legitimate purpose," her "only apparent objective [being] to malign NIPPON . . . and prejudice the Court's consideration of her pending motion to reopen." Dkt. 1 ¶¶ 85, 89. Only the clerk of court or an attorney may issue a subpoena. Fed. R. Civ. P. 45(a)(3). Dela Torre is not an attorney, yet on February 3, 2025, ChatGPT drafted an improper subpoena duces tecum (Exhibit 2)[2] that she issued and served on Nippon. Dkt. 1 ¶ 84. Dela Torre then obtained a parallel subpoena from the Clerk's Office (Exhibit 2)[3], transcribing the same demands and designating production at the Dirksen Federal Building. *Id.* That subpoena was signed under the Court's seal by a Deputy Clerk—unequivocally a court action, and a demonstrable abuse of process. *Id.*

### B.    OPENAI Acted with the Requisite Knowledge

OPENAI's second argument asserts that "ChatGPT is a tool, not a person, and cannot have the requisite 'knowledge' or 'intent' to aid and abet" an abuse of process. Dkt. 15 at 1. OPENAI's argument fails for a number of reasons.

*First*, OPENAI, not ChatGPT, is the named defendant. It is OPENAI's conduct that gives rise to liability for aiding and abetting Dela Torre's abuse of process.

*Second*, "intent" is not a required element for the cause of action. Under Illinois law, aiding and abetting an abuse of process requires: "1) the party whom the defendant aids must perform a wrongful act which causes injury; 2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; 3) the defendant must knowingly and substantially assist the principal violation." *Thornwood, Inc. v.*

---

[2] This Exhibit is directly referenced and cited to in Nippon's Complaint and, as such, properly considered as part of Nippon's opposition to OpenAI's motion to dismiss. *Venture Assocs. Corp v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) *overruled on other grounds*; *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).
[3] *Id.*

17

*Jenner & Block*, 344 Ill.App.3d 15, 27-28 (2003); citing *Wolf v. Liberis,* 153 Ill.App.3d 488, 496 (1987).

*Third*, the Complaint establishes all three elements. Dela Torre explicitly informed ChatGPT of her Agreement with NIPPON and that her lawsuit had been dismissed with prejudice. Despite this, ChatGPT generated legal arguments and drafted court filings designed to circumvent the Agreement, including a motion to reopen the dismissed lawsuit, over 60 motions, memoranda, demands, petitions and requests, 20 requests for judicial notice, and a facially improper subpoena. *See* Dkt. 1 at ¶¶ 60-67.

*Finally*, OPENAI had knowledge of the Agreement, which Dela Torre disclosed directly to ChatGPT, through its robust surveillance program including human reviewers who "evaluate model outputs for factors such as factual accuracy and compliance with content policies." Dkt. 1 at ¶ 30. OPENAI had independent access to and awareness of both Dela Torre's disclosures and ChatGPT's responses. Therefore, OPENAI had the requisite knowledge for culpability under a cause of action for aiding and abetting an abuse of process.

## V. NIPPON PLAUSIBLY PLEADS A CLAIM FOR UNLICENSED PRACTICE OF LAW

OPENAI raises two distinct arguments against NIPPON's third cause of action: 1) NIPPON lacks standing to bring a claim for the unlicensed practice of law under 705 ILCS 205/1; and 2) ChatGPT cannot be held to have practiced law because it is not a human.

### A. NIPPON Seeks Declaratory and Injunctive Relief

NIPPON seeks declaratory and injunctive relief, not monetary damages, for its third cause of action. *See* Dkt. 1 at 49. The declaratory relief sought is made pursuant to the Declaratory Judgment Act ("DJA"), codified as 28 U.S.C. § 2201. The DJA carries its own standing requirement compared to 705 ILCS 205/1, Illinois' Attorney Act. OPENAI's Motion

18

does not challenge NIPPON's standing under the DJA, and that issue is therefore not before the Court.

### B. Standing Under 705 ILCS 205/1 is Not Limited to Licensed Attorneys

OPENAI's Motion claims that only attorneys licensed to practice in Illinois can bring a cause of action for unlicensed practice of law. This argument is based not on the language of the Illinois Attorney Act, 705 ILCS 205/1 (the "Attorney Act") – which is silent on this point – but on a decision of the District Court for the Southern District of Illinois that misreads Illinois authority and improperly adds a restriction that the statute does not contain. Dkt. 15 at 13; citing *Jenkins v. Burkey*, No. 16-cv-792, 2017 WL 2687815, at *6 (S.D. Ill. 2017); *Access Care MSO, LLC v. Oberhedien L. Grp. PPLC.*, No. 18 C 7273, 2020 WL 1139257, *2 n.3 (N.D. Ill. 2020).

The Southern District's holding in *Jenkins* rests on a misinterpretation of *Richard F. Mallen*, 329 Ill. App. 3d 953 (1st Dist. 2002) and *King v. First Capital Fin. Servs Corp.*, 215 Ill. 2d 1 (2005). *See Jenkins*, 2017 WL 2687815, at *6. *In Richard F. Mallen*, the Appellate Court of Illinois applied Illinois' general standing doctrine to find that a law firm had standing to seek an injunction against a website providing unlicensed legal advice. 329 Ill. App. 3d at 955. Although the Court found licensed attorneys satisfied the standing threshold, **it did not hold that only licensed attorneys had standing** under the Attorney Act. *Id.*; citing *Gillson v. City of Marion*, 188 Ill.2d 211, 221 (1999); *Greer v. Illinois Housing Development Authority*, 122 Ill.2d 462, 492-493 (1988). The Illinois Supreme Court's confirmed this reading in *King*, endorsing the holding in *Richard F. Mallen* that "an attorney is **a** proper party to bring such an action [under the Attorney Act]. (emphasis added)" *King*, 215 Ill.2d. at 26-27. Significantly, it did not say that a licensed attorney was the **only** proper party with standing under the Attorney Act. *Id.* A holding that one category of individuals has standing does not exclude standing for all others.

Similarly, OPENAI's other authority for its proposition, *Access Care MSO*, did not hold

19

that non-attorneys do not have standing to bring a claim under the Attorney Act. *Access Care MSO*, at *2 n.3. Rather, the Court simply noted in a footnote that it "questions whether [the plaintiff] falls within the class of individuals who may *See*k injunctive relief under the Act." *Id.* Ultimately, the Court did not decide the issue because the parties had not raised it. *Id.*

Finally, OPENAI's position would require this Court to read a restriction into the Attorney Act that the legislature conspicuously omitted. *See* 705 ILCS 205/1. Courts lack authority to graft limitations onto statutory text that do not appear there. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998). Limiting standing to licensed attorneys would also leave the most directly harmed parties, those subjected to unlicensed legal advice, without recourse. Enforcement would then rely solely on a disinterested third-party attorney's awareness of the violation and a willingness to act, expending the necessary time and resources, to litigate the violation.

### C.     Injunctive Relief May be Sought Under the Attorney Act

Although no private right of action exists for monetary damages under the Attorney Act, a Court may grant a party with standing injunctive relief. The Attorney Act states: "[t]he provisions of this Act shall be in addition to other remedies permitted by law and shall not be construed to deprive courts of this State of their inherent right to punish for contempt or to restrain the unauthorized practice of law." 705 ILCS 205/1. In *King*, the Illinois Supreme Court held that an injunction is "explicitly permitted by the Attorney Act." 215 Ill.2d at 1170. In the present lawsuit, NIPPON is seeking injunctive relief pursuant to the Attorney Act, not monetary damages. *See* Dkt. 1 at 49. Consequently, the relief sought is legally permissible.

### D.     NIPPON Has Standing Under the Attorney Act

To have standing to bring a claim under the Attorney Act, a complainant must plead an injury which is "1) distinct and palpable; 2) fairly traceable to the defendant's actions, and 3)

20

substantially likely to be prevented or redressed by the grant of the requested relief. *Richard F. Mallen*, 329 Ill. App. 3d at 955. NIPPON satisfies all three prongs. As a direct result of OPENAI's unlicensed legal assistance to Dela Torre, NIPPON has incurred approximately $300,000 in legal fees and costs and suffered reputational harm through false and defamatory allegations injected into the public record and misrepresented to third parties as judicially established facts. Dkt. 1 at ¶ 106. Dela Torre's campaign against NIPPON, using ChatGPT is ongoing. *See* Dkt. 1 at ¶¶ 79, 103. These injuries are directly traceable to OPENAI's conduct, and a permanent injunction would prevent their continuation. *See* Dkt. 1 at ¶¶ 50-77. Consequently, NIPPON pleads facts sufficient to confer standing under the Attorney Act.

### E. OPENAI Was Aware That ChatGPT Provided Legal Assistance as Early as 2023

At all times relevant to this lawsuit, OPENAI was fully aware that ChatGPT was providing users with legal assistance. In *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), an attorney submitted a court affirmation drafted by ChatGPT containing non-existent, hallucinated case citations. Dkt. 1 at ¶ 35. When ordered to produce copies of the cited decisions, the attorney submitted excerpts of fabricated cases generated by ChatGPT. *Mata*, 678 F. Supp. 3d at 452-53. *Mata* demonstrated that ChatGPT was capable of providing legal assistance to users and OPENAI was aware of that functionality. In direct response, OPENAI addressed the hallucination problem in a post titled "Improving Mathematical Reasoning with Process Supervision," published May 31, 2023. *Improving Mathematical Reasoning with Process Supervision*, OpenAI, https://openai. com/index/improving-mathematical-reasoning-with-process-supervision/ (last visited July 2, 2026).

Despite this awareness, OPENAI took no action to restrict ChatGPT's legal output for over two years – not until October 29, 2025, when it amended its terms and usage policies to

prohibit users from obtaining tailored legal advice through ChatGPT. Dkt. 1 at ¶ 41. During that entire period, Dela Torre was using ChatGPT to obtain legal assistance across her two lawsuits against NIPPON. *See* Dkt. 1 ¶¶ 50-77.

### F. OPENAI's Provision of Legal Assistance to Dela Torre, Through ChatGPT, Violates the Attorney Act

Illinois' Attorney Act states: "[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose," "nor may an unlicensed person advertise or hold himself or herself out to provide legal services." 705 ILCS 205/1. It is indisputable that OPENAI, through ChatGPT, did both.

The Complaint demonstrates ChatGPT: drafted a complete motion for default judgment, including legal foundation, statutory support, facts, and relief, for submission to the Northern District of Illinois (Dkt. 1 at ¶ 36); produced case summaries and a comparative research table on a legal topic (Dkt. 1 at ¶ 37); provided a structured ERISA fiduciary duty analysis with argument framework, counterarguments, and defenses (Dkt. 1 at ¶ 38); and advised in a step-by-step manner how to vacate a District Court order (Dkt. 1 at ¶ 39). The Complaint also demonstrates how ChatGPT provided legal assistance to Dela Torre by: drafting a judicial notice on an arbitration clause (Dkt. 1 at ¶ 69); drafting judicial notices seeking corrective action against the presiding judge, Judge Pallmeyer (Dkt. 1 at ¶ 75); drafting over 80 court filings including motions, memoranda, subpoenas, and other documents across two lawsuits (Dkt. 1 at ¶¶ 60, 66-67); advising Dela Torre on how to reopen her first lawsuit against NIPPON (Dkt. 1 at ¶ 55); and how to vacate the Court's standing order dismissing the case with prejudice. *Id.* ChatGPT further advised and directed her on how to amend her complaint in the second lawsuit to add NIPPON as a named Defendant. Dkt. 1 at ¶ 64.

ChatGPT's conduct went well beyond the mere recitation of legal information. It

provided strategic direction and case-specific legal documents tailored to Dela Torre's particular circumstances across the full arc of two federal lawsuits. This conduct is more egregious than what the Appellate Court of Illinois found actionable in *Richard F. Mallen*, where a website violated the Attorney Act merely by providing settlement fairness assessments, personalized demand letters, and jury verdict searches. *See Richard F. Mallen,* 339 Ill. App. 3d at 954.

ChatGPT's activity unquestionably constitutes the practice of law as defined by Illinois' Attorney Act. And, as the creator, owner, administrator, and operator of ChatGPT, OPENAI is responsible and directly liable for ChatGPT's illegal activity.

### G. The Prohibitions Against the Unlicensed Practice of Law in the Attorney Act are Not Limited to a "Person"

OPENAI's argument that ChatGPT cannot violate the Attorney Act because it is not a "person" ignores both the named defendant and Illinois law. OPENAI, not ChatGPT, is the Defendant. Under Illinois' Statute on Statutes, the term "person" in any Illinois statute "may extend and be applied to bodies politic and corporate as well as individuals." 5 ILCS 70/1.05. OPENAI's constituent entities, OPENAI Foundation and OPENAI Group PBC, are corporations subject to the Attorney Act's prohibitions. The fact that OPENAI delivers unlicensed legal services through an AI system rather than a human does not place it beyond the reach of Illinois law.

OPENAI's reliance on *Heppner* is also misplaced. In *United States v. Heppner*, 820 F. Supp. 3d 292, 296-98, 2026 WL 436479 (S.D.N.Y. 2026), the Court held that attorney-client privilege and the work product doctrine do not extend to communications between an individual and an AI chatbot, or to the chatbot's outputs. *Heppner*, 820 F. Supp. 3d at 296-298. The Court's rationale was straightforward, no attorney-client relationship can exist between a user and an AI chatbot because the chatbot is not an attorney. *Id.* Far from supporting OPENAI's position,

23

*Heppner* confirms NIPPON's position. The Court did not hold that AI chatbots are incapable of providing legal assistance. It held that they cannot be attorneys. *Id.* The absence of attorney status is precisely what gives rise to NIPPON's claim for unlicensed practice of law – ChatGPT provided legal assistance to Dela Torre. As *Heppner* implicitly acknowledges, AI chatbots are capable of providing legal assistance without the license that Illinois State law requires.

Therefore, OPENAI has violated and continues to violate Illinois' Attorney Act by providing unlicensed legal assistance.

## CONCLUSION

For the foregoing reasons, OPENAI's motion should be denied. Alternatively, NIPPON should be granted leave to amend its Complaint to cure any purported defects.

Dated: July 3, 2026

Respectfully submitted,

Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Defendant
Nippon Life Insurance Company of
America 666 Third Avenue, Suite 2201
New York, New York, 10017
Tel: 646-630-4923
Fax: 212-867-3057

24