# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

|  |  |
|---|---|
| NIPPON LIFE INSURANCE COMPANY OF AMERICA, | Case No. 1:26-CV-02448 |
| Plaintiff, | |
| v. | Judge: Hon. John F. Kness |
| OPENAI FOUNDATION, and OPENAI GROUP PBC, | |
| Defendants. | |

**OPENAI DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     NIPPON DOES NOT STATE A CLAIM FOR TORTIOUS INTERFERENCE
WITH CONTRACT.................................................................................................. 2

        A.     Illinois law bars claims for tortious interference with contract based on the
filing of a lawsuit. ...................................................................................... 2

        B.     The litigation privilege bars Nippon's tortious interference claim. ......................... 4

        C.     Nippon fails to plead that Dela Torre breached the underlying settlement
agreement. ................................................................................................... 5

        D.     Nippon fails to plead that OpenAI had knowledge of the underlying
settlement agreement. ................................................................................. 5

        E.     Nippon fails to plead that OpenAI intentionally interfered with the
underlying settlement agreement. ............................................................... 7

II.    NIPPON DOES NOT STATE A CLAIM FOR AIDING AND ABETTING
ABUSE OF PROCESS ........................................................................................... 11

        A.     Nippon fails to allege that Dela Torre abused process under Illinois law. ........... 12

        B.     Nippon fails to allege that OpenAI knowingly and substantially assisted
Dela Torre's alleged abuse of process. ................................................... 13

III.   NIPPON DOES NOT STATE A CLAIM FOR UNAUTHORIZED PRACTICE
OF LAW ................................................................................................................ 15

        A.     Nippon lacks standing to bring a claim for unauthorized practice of law. ........... 15

        B.     Nippon fails to plausibly allege that OpenAI is engaged in the
unauthorized practice of law. ................................................................... 17

        C.     ChatGPT is incapable of practicing law. .............................................................. 20

CONCLUSION ................................................................................................................. 20

i

## TABLE OF AUTHORITIES

### CASES

*Access Care MSO, LLC v. Oberheiden Law Group PLLC*,
No. 18 C 7273, 2020 WL 1139257 (N.D. Ill. Mar. 9, 2020) ......................................15, 16

*Aland v. U.S. Dep't of the Interior*,
No. 22-CV-5821, 2023 WL 12238794 (N.D. Ill. Mar. 1, 2023).......................................17

*ATC Healthcare Services, Inc. v. RCM Techs., Inc.*,
282 F. Supp. 3d 1043 (N.D. Ill. 2017) ...............................................................................3

*Bartucci v. Wells Fargo Bank N.A.*,
No. 14 CV 5302, 2015 WL 6955482 (N.D. Ill. Nov. 10, 2015) ........................................17

*BCD Tech. Holdings, LLC v. Paragon Micro, Inc.*,
No. 25 CV 6944, 2026 WL 788078 (N.D. Ill. Mar. 20, 2026) ............................................9

*Brown v. Montgomery*,
No. 20 CV 04893, 2024 WL 1243669 (N.D. Ill. Mar. 22, 2024) ........................................7

*Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.*,
461 F. Supp. 2d 757 (S.D. Ill. 2006)...................................................................................5

*Clark v. Gannett Co.*,
2018 IL App (1st) 172041, 122 N.E.3d 376 (Ill. App. Ct. 2018) .....................................16

*Cole v. Yanoff*,
2025 IL App (1st) 241017-U (Ill. App. Ct. 2025) .............................................................13

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
146 S. Ct. 959 (2026)........................................................................................................13

*Creation Supply, Inc. v. Hahn*,
608 F. Supp. 3d 668 (N.D. Ill. 2022), *aff'd* 61 F.4th 511 (7th Cir. 2023) ..........................4

*Davis v. Ret. Plan of Phibro Animal Health Corp.*,
845 F. Supp. 2d 915 (S.D. Ill. 2012)...................................................................................5

*Dela Torre v. Nippon Life Insurance Company of America*,
No. 1:22-cv-07059, ECF Nos. 34, 35 (N.D. Ill. 2024) ..................................................5, 13

*Doe v. GTE Corp.*,
347 F.3d 655 (7th Cir. 2003) ..............................................................................................6

*Edelson P.C. v. Bandas Law Firm PC*,
No. 16 C 11057, 2018 WL 3496085 (N.D. Ill. July 20, 2018) ....................................12, 13

*Fed. Trade Comm'n v. Walmart Inc.*,
664 F. Supp. 3d 808 (N.D. Ill. 2023) ...............................................................................13

ii

*Garcia v. Character Techs., Inc.*,
    785 F. Supp. 3d 1157 (M.D. Fla. 2025) ...............................................................................8

*Gorman-Dahm* v. *BMO Harris Bank, N.A.*,
    94 N.E.3d 257 (Ill. App. Ct. 2018) ...................................................................................13

*Havoco of Am. v. Hollobow*,
    702 F.2d 643 (7th Cir. 1983) ..............................................................................................3

*Illinois State Rifle Ass'n v. State of Ill.*,
    717 F. Supp. 634 (N.D. Ill. 1989) ....................................................................................16

*In re Reynoso*,
    477 F.3d 1117 (9th Cir. 2007) ..........................................................................................19

*Isbell v. Allstate Ins. Co.*,
    418 F.3d 788 (7th Cir. 2005) ..............................................................................................5

*Jenkins v. Burkey*,
    No. 16-cv-792-JPG-SCW, 2017 WL 2687815 (S.D. Ill. June 22, 2017) ....................15, 16

*Jones v. Kankakee County Sheriff's Department*,
    164 F.4th 967 (7th Cir. 2026) ...........................................................................................18

*Kagan v. Waldheim Cemetery Co.*,
    2016 IL App (1st) 131274, 53 N.E.3d 259 (Ill. App. Ct. 2016) .......................................16

*Kerr v. Puckett*,
    138 F.3d 321 (7th Cir. 1998) ............................................................................................16

*King v. First Cap. Fin. Servs. Corp.*,
    215 Ill. 2d 1 (Ill. 2005)................................................................................................15, 16

*Kumar v. Bornstein*,
    820 N.E.2d 1167 (Ill. App. Ct. 2004) ..............................................................................12

*Leventhal v. Schenberg*,
    917 F. Supp. 2d 837 (N.D. Ill. 2013) ..............................................................................12

*Lewis v. Kalbhen*,
    2025 IL App (1st) 242110, 277 N.E.3d 922 (Ill. App. Ct. 2025) ......................................4

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023)..............................................................................18

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..............................................................................................8

*Michalowski v. Flagstar Bank, FSB*,
    2002 WL 113905 (N.D. Ill. Jan. 24, 2002)......................................................................18

*Mobley v. Workday*,
    740 F. Supp. 3d 796 (N.D. Cal. 2024) ...............................................................................8

iii

*Motykie v. Motykie*,
    2025 WL 2160719 (N.D. Ill. July 30, 2025)......................................................................13

*Orozco v. Orozco*,
    No. 22 CV 3122, 2023 WL 2895750 (N.D. Ill. Apr. 11, 2023)........................................13

*R.E. Davis Chem. Corp. v. Diasonics, Inc.*,
    826 F.2d 678 (7th Cir. 1987) ............................................................................................8

*Richard F. Mallen & Assocs., Ltd. v. Myinjuryclaim.com Corp.*,
    329 Ill. App. 3d 953 (Ill. App. Ct. 2002) ...........................................................15, 16, 19

*Slep-Tone Ent. Corp. v. Elwood Enterprises, Inc.*,
    165 F. Supp. 3d 705 (N.D. Ill. 2015) ..............................................................................13

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*,
    376 F.3d 664 (7th Cir. 2004) ..........................................................................................11

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)...................................................................................................13, 14

*United States v. Heppner*,
    820 F. Supp. 3d 292 (S.D.N.Y. 2026).............................................................................20

*Webb v. Frawley*,
    906 F.3d 569 (7th Cir. 2018) ...................................................................................7, 8, 10

*Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*,
    No. 17 CV 4723, 2019 WL 4189480 (N.D. Ill. Sept. 4, 2019)..........................................7

*Ybarra v. Centrust Bank, N.A.*,
    2024 IL App (1st) 232072-U (Ill. App. Ct. 2024) ...........................................................3

## STATUTES

705 ILCS 205/1................................................................................................................20

## RULES

Federal Rule of Civil Procedure 45(a)(3) ....................................................................12

## MISCELLANEOUS

Restatement (Second) of Torts § 8A.....................................................................8, 9, 10

Restatement (Third) Agency § 1.04.............................................................................11

iv

**INTRODUCTION**

Nippon's opposition confirms why its Complaint should be dismissed. Its central argument is that OpenAI, not ChatGPT, is the defendant in this case. That only underscores Nippon's problem. The Complaint does not and cannot plausibly allege that *OpenAI*, rather than ChatGPT, had any knowledge of Dela Torre's ongoing disputes with Nippon, much less participated in them. For this reason alone, Nippon's claims, each of which also requires that OpenAI intentionally induced or substantially assisted Dela Torre's alleged misconduct, fail as a matter of law. Nippon's reliance on employment and product liability cases and general tort law does not save its claims against OpenAI.

As discussed in the opening brief and below, Nippon's claims fail for myriad additional reasons, including that it cannot plead facts that establish the elements of any of them.

First, Nippon's tortious interference claim fails because it is based entirely on Dela Torre's filing of lawsuits, an invalid theory under Illinois law. It is also barred by the litigation privilege. Moreover, Nippon does not, and cannot, plausibly allege three essential elements of the claim: breach of contract, defendant's knowledge of the contract, and defendant's intent to induce a breach. Again, Nippon does not plausibly allege that Dela Torre breached her agreement, or that OpenAI knew about it, much less had any intent to induce its breach.

Second, Nippon's claim for aiding and abetting abuse of process fails as well. In its opposition, Nippon narrows its abuse of process claim to rely on a single act: an allegedly improper subpoena issued by Dela Torre. But issuance of the subpoena was a ministerial act by the Clerk, not process of the Court. Regardless, the Court quashed the subpoena at Nippon's behest, and, again, Nippon's claim is barred by the litigation privilege. Moreover, Nippon does not plausibly allege that OpenAI knowingly and substantially assisted in the alleged abuse.

1

Finally, Nippon's claim for unauthorized practice of law fails because Nippon lacks standing to bring the claim. Under Illinois law, a private right of action for unauthorized practice of law is available only to attorneys. Even if Nippon had standing, Dela Torre's use of an AI tool like ChatGPT does not constitute unauthorized practice of law by the AI tool's provider. ChatGPT is not a lawyer and it does not practice law. To the contrary, it is a consumer-facing platform used by hundreds of millions of people worldwide to enhance productivity and efficiency, in some cases as a tool and aid that advances access to legal resources and justice. Indeed, state and federal courts in Illinois expect, encourage and authorize litigants, including *pro se* litigants, to use AI tools. Therefore, the use of these tools cannot constitute unauthorized practice of law.

Ultimately, none of Nippon's claims is the proper vehicle for a litigant complaining about the litigation activity of its adversary. To the contrary, Illinois law is clear that Nippon's recourse is against Dela Torre and should have been pursued in the underlying cases. Like all other litigants, she is responsible for her alleged litigation misconduct. OpenAI – which had no knowledge of Dela Torre's actions, had no intent to enable them, and did not actively participate in them – is not. Nippon's recourse is against Dela Torre, not OpenAI.

OpenAI respectfully requests that the Court dismiss Nippon's Complaint with prejudice.

## ARGUMENT

### I. NIPPON DOES NOT STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

#### A. Illinois law bars claims for tortious interference with contract based on the filing of a lawsuit.

Nippon's claim for tortious interference is predicated in its entirety on Dela Torre's alleged litigation misconduct. Mot. at 6; Compl. ¶¶ 53-59, 64, 65. As OpenAI explained in the Motion, black letter Illinois law prohibits Nippon from basing a claim for intentional interference

2

with contract on alleged misconduct in a prior action or for filing a lawsuit. Mot. at 6-7 (collecting cases).

In response, Nippon argues that OpenAI is liable for tortious interference because ChatGPT was not a party to the underlying lawsuits, but instead allegedly induced Dela Torre to file and prosecute them. Opp. at 10-11. This does not save Nippon's claim. Illinois law bars claims for tortious interference based on the wrongful filing of a lawsuit, regardless of whether the filing of the lawsuit induced a breach or was the breach itself. Indeed, in *Havoco of Am. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983), the Seventh Circuit affirmed summary judgment on a tortious interference claim against a defendant law firm where "plaintiff's only allegation against the firm is that it participated in the filing of the lawsuit, and under Illinois law, such conduct cannot give rise to liability as a tortious interference with business relationships."

Like the dismissed law firm in *Havoco*, Nippon's sole allegations against OpenAI are that ChatGPT "induced Dela Torre to breach the settlement Agreement by knowingly generating legal arguments and drafting court filings that encouraged and facilitated a challenge to the Agreement." Compl. ¶ 111; Mot. at 10. Illinois only recognizes two claims, malicious prosecution and abuse of process, for the wrongful filing of a lawsuit. Mot. at 6 (citing *Havoco*, 702 F.2d at 647); *see also Ybarra v. Centrust Bank, N.A.*, 2024 IL App (1st) 232072-U, ¶¶ 42-43 (Ill. App. Ct. 2024) (affirming dismissal of tortious interference with contract claim because complaint was "wholly premised on communications and actions taken in [prior case]"). Nippon does not address this black letter rule in its opposition. *ATC Healthcare Services, Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) ("Failure to respond to an argument in a motion to dismiss permits an inference of acquiescence to the argument which acts as a waiver."). For this reason alone, Nippon's tortious interference claim fails.

3

**B.**     **The litigation privilege bars Nippon's tortious interference claim.**

In addition, Nippon's claim is barred by the litigation privilege, which shields "litigation-related conduct" from liability under Illinois law. Mot. at 7. Nippon argues that the litigation privilege only applies to "attorneys and parties" and therefore cannot apply to OpenAI because it is neither an attorney nor a party to Dela Torre's lawsuits. Opp. at 12-13. That misunderstands the litigation privilege, which provides "absolute" protection and "complete immunity" with respect to communications that "pertain to proposed or pending litigation." *Creation Supply, Inc. v. Hahn*, 608 F. Supp. 3d 668, 697 (N.D. Ill. 2022), *aff'd* 61 F.4th 511 (7th Cir. 2023).

According to the Complaint, Nippon was damaged by OpenAI's alleged tortious interference solely because Dela Torre used ChatGPT to aid in her filing and maintenance of *pro se* lawsuits against Nippon. Compl. ¶¶ 113-114. That is conduct by Dela Torre, not ChatGPT. Because the entirety of OpenAI's alleged misconduct pertains to ChatGPT's communications with Dela Torre about her litigation with Nippon, it is protected by the litigation privilege. The privilege attaches to litigation-related communications and extends to non-attorneys who assist a party or her counsel. Invoking it neither requires OpenAI or ChatGPT to have been an attorney nor concedes that ChatGPT practiced law (it did not and does not). *See Lewis v. Kalbhen*, 2025 IL App (1st) 242110, ¶ 32, 277 N.E.3d 922, 932 (Ill. App. Ct. 2025) (An investigator working at attorney's direction "is entitled to the same absolute litigation privilege as that enjoyed by the attorney."). If a plaintiff could evade the privilege by suing whoever allegedly assisted the party in preparing litigation filings—a typist, a paralegal, a ghostwriter or a software vendor—the privilege's guarantee of "the utmost freedom" in judicial proceedings would be worthless. *Id.*

4

**C.    Nippon fails to plead that Dela Torre breached the underlying settlement agreement.**

To state a claim for tortious interference with contract, Nippon must plead that Dela Torre breached her settlement agreement with Nippon. It has not. As a matter of law, Dela Torre's attempt to vacate that agreement by challenging its validity is not a breach of contract. Mot. at 7-8 (citing *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005); *Davis v. Ret. Plan of Phibro Animal Health Corp.*, 845 F. Supp. 2d 915 (S.D. Ill. 2012); and *Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.*, 461 F. Supp. 2d 757, 766 (S.D. Ill. 2006)).

Nippon ignores *Isbell*, *Davis* or *Buller*, and does not dispute that challenging the validity of a settlement agreement cannot, in and of itself, constitute breach of that contract, again conceding the point. Instead, Nippon argues that Dela Torre breached another provision in the underlying settlement agreement, her alleged promise "to dismiss case 1-22-cv-07059 against Nippon with prejudice." Opp. at 12, 14-15 (citing Compl. ¶ 45).

Dela Torre did not breach this alleged promise. The Complaint itself admits that Dela Torre "filed a joint stipulation to dismiss the lawsuit with prejudice" and that "[t]he Court subsequently dismissed the case with prejudice on January 24, 2024." Compl. ¶ 47; *see also Dela Torre v. Nippon Life Insurance Company of America*, No. 1:22-cv-07059, ECF Nos. 34, 35 (N.D. Ill. 2024). In short, Dela Torre complied with her agreement to dismiss the case. Nippon does not allege, nor could it, that Dela Torre agreed not to challenge its validity and not to sue Nippon in the future. In fact, the agreement does not contain a covenant not to sue.

**D.    Nippon fails to plead that OpenAI had knowledge of the underlying settlement agreement.**

To allege a claim for tortious interference with contract, Nippon must plausibly allege that OpenAI knew of the underlying agreement between Dela Torre and Nippon. Mot. at 8-10.

5

Nippon concedes that ChatGPT is not a person. Opp. at 7. It therefore cannot have the knowledge required to tortiously interfere. Mot. at 8-9.

Because ChatGPT cannot have the required knowledge, Nippon repeatedly reminds the Court that "OPENAI is the named Defendant(s) in this lawsuit, not ChatGPT." Opp. at 4, 6, 7, 15. That is the point. The Complaint does not plausibly allege that OpenAI, as distinguished from ChatGPT, had any knowledge of the settlement agreement. Nippon's only counter is an allegation that OpenAI generally engages in a "surveillance program" by employing "automated safety systems," "tools," and "[h]uman reviewers [to] evaluate model outputs for factors such as factual accuracy and compliance with content policies." Opp. at 6, 7, 15, 16 (citing Compl. ¶ 30). OpenAI's alleged use of "systems" to identify "harmful" and "violating content" on ChatGPT (Compl. ¶ 30)—which has over 900 million weekly active users—says nothing about OpenAI's supposed knowledge of any content *Dela Torre* generated using the service, much less how she intended to use it. Tellingly, Nippon never alleges that anyone at OpenAI specifically evaluated model outputs sent to Dela Torre. Nor was OpenAI required to. *See Doe v. GTE Corp.*, 347 F.3d 655, 661 (7th Cir. 2003) ("Landlord, phone company, delivery service, and web host all *could* learn, at some cost, what Franco was doing with the services and who was potentially injured as a result; but state law does not require these providers to learn, or to act as Good Samaritans if they do.") (emphasis in original). Again, Nippon does not cite a single case in which an online provider was held to have knowledge of information provided by its users without specific allegations that establish such knowledge. For this reason alone, Nippon's tortious interference claim fails.

6

**E.      Nippon fails to plead that OpenAI intentionally interfered with the underlying settlement agreement.**

To state a claim for tortious interference, Nippon must plausibly allege that OpenAI intentionally induced breach of the settlement agreement.  As OpenAI explained, ChatGPT is not a conscious person and is therefore incapable of acting with such intent.  Mot. at 9.

Nippon's arguments in opposition are incorrect.

**First**, Nippon again tries to shift its focus to OpenAI, rather than ChatGPT.  Opp. at 7 ("The relevant 'intent' is that of the Defendant – OpenAI, not ChatGPT.").  That does not help Nippon because the Complaint never alleges that OpenAI, as opposed to ChatGPT, formed any intent with respect to Dela Torre or Nippon.  Mot. at 8 n.5.

Illinois law requires strict and specific intent to state a claim for tortious interference. Nippon's allegations that OpenAI (1) "designed ChatGPT to provide legal services," (2) was aware "that the program was being used to provide legal assistance to users" and (3) refused to "modify the Model Spec to restrict ChatGPT's assistance to Dela Torre," Opp. at 16, have nothing to do with the settlement agreement, much less an intent to induce Dela Torre to breach it.  They fall far short of the "specific intent of inducing" required to state a claim.  *Brown v. Montgomery*, No. 20 CV 04893, 2024 WL 1243669, at *6 (N.D. Ill. Mar. 22, 2024) (dismissing tortious interference claim; "[I]t is not enough for a plaintiff to allege that a defendant 'merely created a condition that opened the way' for a breach, or that the defendant engaged in conduct that had a 'downstream' impact on a plaintiff's contract."); *see also Webb v. Frawley*, 906 F.3d 569, 579 (7th Cir. 2018) ("active persuasion, encouragement, or inciting" is required to establish intent to induce a breach); *Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, No. 17 CV 4723, 2019 WL 4189480, at *8 (N.D. Ill. Sept. 4, 2019) (dismissing tortious interference with contract

7

claim where actions by Wells Fargo "could have caused a third party to breach their contract" because there was no plausible allegation that "Wells Fargo intended that result").

Nippon's only case in which a court allowed a tortious interference claim to proceed, *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010), is inapposite. There, the parties did not dispute that MDY knew of and intentionally interfered with Blizzard's terms of service by designing software that enabled users to violate those terms. *Id.* at 936, 955-56. The only question was whether the interference was improper. *Id.* at 956. Here, in contrast, there is no plausible allegation that OpenAI had any knowledge of the settlement agreement, much less that it intentionally interfered with it.[1]

**Second**, Nippon cites general principles of tort law to argue that "intent may be established where the firm knew with substantial certainty that harm would result from its system's design and deployment." Opp. at 5 (citing Restatement (Second) of Torts § 8A). That is simply incorrect. "[K]nowledge that one's conduct is substantially certain to result in one party breaking its contract with another does not constitute inducement." *Webb*, 906 F.3d at 579 (citing *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 687 (7th Cir. 1987)). Inducement "requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Id.* OpenAI's provision of ChatGPT, which, by Nippon's own admission, produces outputs "automatically," Compl. ¶ 24, is not active inducement by OpenAI. *See Webb*, 906 F.3d at 577-80 (affirming dismissal of tortious interference claim based solely on defendant's alleged provision of information to the alleged

---

[1] Nippon argues generally that "OpenAI is liable for ChatGPT's output," citing to *Mobley v. Workday*, 740 F. Supp. 3d 796 (N.D. Cal. 2024) and *Garcia v. Character Techs., Inc.*, 785 F. Supp. 3d 1157, 1173 (M.D. Fla. 2025). Opp. at 4-5. These cases are irrelevant. *Mobley* is about alleged violations of workplace discrimination acts. *Garcia* is a products liability case. Neither involves claims for tortious interference, aiding and abetting abuse of process or unauthorized practice of law, which are at issue here.

breaching party where there was no allegation that the defendant "intended to cause the breach"); *BCD Tech. Holdings, LLC v. Paragon Micro, Inc.*, No. 25 CV 6944, 2026 WL 788078, at \*12 (N.D. Ill. Mar. 20, 2026) (dismissing tortious interference claim where the complaint did not "allege facts demonstrating that the defendant played an active role in bringing about the breach"; "Alleging that a defendant passively allowed a breach is not enough.").

**Third**, tacitly conceding that it cannot plead that OpenAI itself intended anything with respect to the settlement agreement, Nippon pivots back to accusations against ChatGPT, arguing that ChatGPT intended to interfere with the settlement agreement, and that its "actions are a manifestation of OpenAI's intent." Opp. at 7-8. None of these allegations are sufficient to plead the intent necessary to state a claim under Illinois law, a specific intent by OpenAI to induce a breach of the settlement agreement.

Nippon does not even plausibly allege that ChatGPT had even a general intent to interfere with the settlement agreement. To the contrary, Nippon acknowledges that any desire to vacate the agreement came from Dela Torre. Compl. ¶ 53. Its admission that ChatGPT "automatically" produces outputs by "predicting the most appropriate sequence of words based on its training" forecloses any suggestion that ChatGPT desired that outcome, much less induced it. *Id.* ¶¶ 24, 27.

Nippon argues that "[e]xisting doctrines on tort law do not require proof that an individual 'desired' the outcome for the requisite intent to be satisfied." Opp. at 8 (citing Restatement (Second) of Torts § 8A(b)). Restatement § 8A does not help Nippon. It defines "intent" to "denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A. But as discussed above, Nippon simply ignores Illinois law concerning tortious interference,

9

which requires more. To state a claim for tortious interference under Illinois law substantial certainty is not enough, active desire is required. *Supra* at 7-8. Nippon concedes that "contemporary AI programs may not be able to manifest desire." Opp. at 8.

**Fourth**, Nippon relies on an academic study, Daniel Gervais & John Nay, The Phantom Agent: Artificial Intentionality and Legal Responsibility (Stanford, CodeX White Paper, May 26, 2026) (last accessed July 6, 2026), to argue that ChatGPT can form intent. Opp. at 8-9 (citing Gervais and Nay at 11, 13, 15-18). That study also does not help Nippon because it primarily concerns substantial certainty. It focuses not on whether an AI tool desired an outcome—the relevant inquiry here—but rather on whether AI systems exhibit behavior like "structured goal persistence" that, when exhibited in humans, can be considered evidence of intent, in particular evidence of conduct which is substantially certain to result in harm. *Id.* at 16 & nn.41 & 42 (citing Restatement § 8A(b), which focuses on substantial certainty rather than desired outcome); *see also id.* at 9 (focusing not on "proof that a defendant desired a particular harm" but on whether "defendant knew with substantial certainty that harm would result."). That is irrelevant here, where the requisite intent requires that the defendant desired the outcome. *Webb*, 906 F.3d at 579. The article itself makes clear that the experiments the authors ran do "not establish that the system 'desired' the outcome." Gervais and Nay at 15. That an AI tool could potentially exhibit "persistence" in completing instructions does not establish intent under Illinois law.

**Finally**, contrary to Nippon's arguments, even if ChatGPT could form the requisite intent to interfere with a contract, OpenAI would not be liable for its conduct on either the theory of respondeat superior or apparent authority. Opp. at 5-6 (citing Restatement (Third) of Agency). The Complaint does not allege facts establishing that ChatGPT acted on behalf of OpenAI, as its agent. Indeed, the Restatement makes clear that "[t]o be capable of acting as a principal or an

10

agent, it is necessary to be a person, which in this respect requires capacity to be the holder of legal rights and the object of legal duties." Restatement (Third) Agency § 1.04 cmt. e. ChatGPT is not a person, and thus does not hold legal rights and is not the object of legal duties. It cannot be an agent. *Id.* ("[A] computer program is not capable of acting as a principal or an agent as defined by the common law.").

Even if ChatGPT could be an agent, the Complaint alleges that ChatGPT acted on behalf, and under the direction and control, of Dela Torre, rendering her, not OpenAI, responsible for its outputs. *See* Compl. ¶¶ 50, 52, 53-56 ("Dela Torre asked ChatGPT to provide her with advice"), 64, 66, 67, 68; Illinois Pattern Civil Jury Instruction 50.05 ("An agent is a person who acts for a principal in accordance with a consensual arrangement and who is subject to the control or right to control by the principal."); *see also* Restatement (Third) Agency § 1.04 cmt. e ("computer programs are instrumentalities of the persons who use them."). Moreover, apparent authority requires that Nippon reasonably conclude that ChatGPT was acting on behalf of OpenAI. *See Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 673 (7th Cir. 2004). The Complaint does not allege any interaction between Nippon and ChatGPT at all, much less that Nippon thought that ChatGPT represented OpenAI. If anything, the Complaint alleges that ChatGPT represented Dela Torre. *See* Compl. ¶ 54-55, 126.

## II. NIPPON DOES NOT STATE A CLAIM FOR AIDING AND ABETTING ABUSE OF PROCESS

Nippon's claim against OpenAI for aiding and abetting abuse of process fails because it does not allege that Dela Torre abused process, much less that OpenAI knowingly and substantially assisted in an abuse of process.

11

A.      **Nippon fails to allege that Dela Torre abused process under Illinois law.**

Nippon's claim for abuse of process requires it to show that "the court's process was used to accomplish some result that is beyond the purview of the process, such as an arrest, the seizure of property, or a fraudulent and malicious manipulation of summons." *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 843 (N.D. Ill. 2013) (citing *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173-74 (Ill. App. Ct. 2004)).  Nippon does not come close.  The Complaint alleges Dela Torre abused process by improperly filing "motions, notices, subpoenas, and requests for judicial notice." Compl. ¶ 68; *see also id*. ¶ 60.  But "[a]ctions solely undertaken by a party are not process; process is issued by the court, under its official seal." *Edelson P.C. v. Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 3496085, at *8 (N.D. Ill. July 20, 2018).

Rather than defend its insufficient allegations, Nippon abandons all but one instance of Dela Torre's alleged abuse of process: Dela Torre's alleged issuance of a subpoena to Nippon. Opp. at 16-17.  Even though the Complaint alleges only that Dela Torre improperly "issued a subpoena duces tecum to Nippon," Compl. ¶ 84, Nippon now contends that the subpoena was an abuse of process because it "was signed under the Court's seal by a Deputy Clerk," which was "unequivocally a court action." Opp. at 17.  That is wrong for several reasons.

**First**, Federal Rule of Civil Procedure 45(a)(3) provides that "[t]he clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it."  This ministerial act is not process. *See Kumar*, 820 N.E.2d at 1173-76 ("[T]he mere issuance of a summons is not an abuse of process"; rejecting claim that issuance of "discovery subpoenas" constitutes abuse of process).

**Second**, even if Dela Torre's alleged subpoena were process issued by the Court, it was not abuse of process because it did not "accomplish some result beyond the purview of the process or to compel the party against whom it was used to do some collateral thing he could not legally be compelled to do." *Id.* at 1175.  To the contrary, Nippon promptly moved to quash the

12

subpoena, and the Court granted the motion. *See Dela Torre v. Nippon*, No. 1:22-cv-07059, ECF Nos. 60, 61, 70, 70-1 & 94 (N.D. Ill. 2025). Nippon was not compelled to do anything, so its claim fails. *See Edelson*, 2018 WL 3496085, at *8-9 (dismissing abuse of process claim where the court "did not require anything of Plaintiff"); *Slep-Tone Ent. Corp. v. Elwood Enterprises, Inc.*, 165 F. Supp. 3d 705, 714 (N.D. Ill. 2015) (dismissing abuse of process claim where claimant did not plead that the counterclaim defendant "used this Court's process to force it to do something it was not legally required to do."); *Orozco v. Orozco*, No. 22 CV 3122, 2023 WL 2895750, at *2 (N.D. Ill. Apr. 11, 2023) (dismissing abuse of process claim where "the complaint doesn't allege that this process was used to achieve anything beyond the normal scope").

**Finally**, Nippon's abuse of process claim also fails because it is barred by the litigation privilege. Mot. at 11 (citing *Motykie v. Motykie*, 2025 WL 2160719, at *5-6 (N.D. Ill. July 30, 2025); *Cole v. Yanoff*, 2025 IL App (1st) 241017-U, ¶ 17 (Ill. App. Ct. 2025); *Gorman-Dahm* v. *BMO Harris Bank, N.A.*, 94 N.E.3d 257, 262-63 (Ill. App. Ct. 2018), each dismissing abuse of process claims based on litigation privilege).

**B.      Nippon fails to allege that OpenAI knowingly and substantially assisted Dela Torre's alleged abuse of process.**

Nippon also fails to allege that OpenAI aided and abetted an abuse of process. Aiding and abetting requires knowing and substantial assistance. As OpenAI explained in the Motion, making ChatGPT available to hundreds of millions of people for general purpose use is not aiding and abetting as a matter of law. Mot. at 12 (citing *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023); *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 969, 974-75 (2026); *Fed. Trade Comm'n v. Walmart Inc.*, 664 F. Supp. 3d 808, 828 (N.D. Ill. 2023)). Nippon does not

13

respond to this argument. Instead, it makes four arguments that OpenAI aided and abetted Dela Torre. Each is wrong.

**First**, Nippon reiterates that "OpenAI, not ChatGPT is the named defendant." Opp. at 17. Again, that helps OpenAI, not Nippon, because the Complaint does not contain any factual allegations that OpenAI, as distinguished from ChatGPT, knew about, much less assisted Dela Torre in, her alleged abuse of process. *Supra* at 5-8.

**Second**, Nippon argues that "intent" is not a required element of aiding and abetting. That is wrong. Aiding and abetting requires knowing and substantial assistance, which is a form of intent. *Taamneh*, 598 U.S. at 506 ("The point of aiding and abetting is to impose liability on those who consciously and culpably participated in the tort at issue."); *see also id.* at 507 (rejecting claim for aiding and abetting where "plaintiffs have failed to allege that defendants intentionally provided any substantial aid"). Nippon does not allege any knowledge or assistance by OpenAI.

**Third**, acknowledging that Nippon does not allege that OpenAI itself knowingly engaged in conduct to aid Dela Torre, Nippon reverts to arguing that ChatGPT provided knowing and substantial assistance because, with knowledge of the text of the agreement, ChatGPT allegedly "generated legal arguments and drafted court filings designed to circumvent the Agreement." Opp. at 18. But ChatGPT could not have provided knowing assistance to Dela Torre. "The 'knowing' part of th[e] inquiry is . . . designed to capture the defendants' state of mind with respect to their actions and the tortious conduct." *Taamneh*, 598 U.S. at 504. But ChatGPT does not have a "state of mind" like a person does. Indeed, Nippon concedes that it responds by "predicting the most appropriate sequence of words based on its training." Compl. ¶ 27. Therefore, it cannot be liable for aiding and abetting as a matter of law.

14

**Finally**, Nippon returns to its baseless argument that OpenAI had knowledge of the agreement through the "robust surveillance program, including human reviewers," that OpenAI allegedly employs to identify violative output generated across many millions of ChatGPT accounts. Opp. at 18. Again, this allegation does not plausibly plead that OpenAI had knowledge of anything Dela Torre did or any content she generated using ChatGPT, much less of the settlement agreement specifically. *Supra* at 5-6. Even if it did, Nippon does not plead that OpenAI itself provided substantial assistance to Dela Torre. For these reasons, Nippon's claim for aiding and abetting fails.

## III. NIPPON DOES NOT STATE A CLAIM FOR UNAUTHORIZED PRACTICE OF LAW

### A. Nippon lacks standing to bring a claim for unauthorized practice of law.

"The only people who can bring an unauthorized practice of law cause of action are other attorneys licensed in Illinois because the practice of law by unlicensed persons constitutes an infringement upon the rights of those who are properly licensed." *Jenkins v. Burkey*, No. 16-cv-792-JPG-SCW, 2017 WL 2687815, at *6 (S.D. Ill. June 22, 2017) (citation omitted); *see also Access Care MSO, LLC v. Oberheiden Law Group PLLC*, No. 18 C 7273, 2020 WL 1139257, at *2 n.3 (N.D. Ill. Mar. 9, 2020). Nippon is not an attorney. Therefore, it cannot bring a claim for unauthorized practice of law. Mot. at 13.

Nippon's arguments to the contrary are incorrect. **First**, it argues that *Jenkins* is based on a misreading of *King v. First Cap. Fin. Servs. Corp.*, 215 Ill. 2d 1 (Ill. 2005) and *Richard F. Mallen & Assocs., Ltd. v. Myinjuryclaim.com Corp.*, 329 Ill. App. 3d 953 (Ill. App. Ct. 2002), which it claims do not hold that ***only*** licensed attorneys have standing to bring a claim for unauthorized practice of law in Illinois. Opp. at 19. That is wrong. The body of case law on this issue consistently holds that attorneys have standing to bring claims for unauthorized

15

practice of law while non-attorneys do not. *See, e.g., Jenkins*, 2017 WL 2687815, at *6-7 (no standing for non-attorney); *Access Care*, 2020 WL 1139257 at *2 n.3 (questioning whether non-attorney plaintiff has standing to sue for unauthorized practice of law); *King*, 215 Ill. 2d at 26-27 (no private right of action for non-attorney); *Mallen*, 329 Ill. App. 3d at 956 (law firm could sue for unauthorized practice of law). Nippon does not cite a single case allowing a non-attorney to bring a claim for unauthorized practice of law in Illinois.

**Second**, Nippon argues that a prohibition against non-attorneys bringing claims for unauthorized practice of law would "graft limitations onto statutory text that do not appear." Opp. at 20. That is wrong. The Illinois Attorney Act does not confer a private right of action on anyone. *Clark v. Gannett Co.*, 2018 IL App (1st) 172041, ¶ 73, 122 N.E.3d 376, 389 (Ill. App. Ct. 2018) ("No private right of action exists under the Attorney Act, but other attorneys licensed in Illinois have standing to bring an unauthorized practice of law cause of action"). Because there is no private right of action for non-attorneys under the Illinois Attorney Act, Nippon's argument that it satisfies all three elements of Illinois standing law is irrelevant. *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 50, 53 N.E.3d 259, 270 (Ill. App. Ct. 2016) (where plaintiff had no "right of private action" the court "need not address" standing); *Illinois State Rifle Ass'n v. State of Ill.*, 717 F. Supp. 634, 637 (N.D. Ill. 1989) (the court must decide the "first-level question of whether any private right of action exists to enforce the Act" before confronting standing).[2]

**Finally**, Nippon argues that it may bring a claim for injunctive relief under the Illinois Attorney Act. Opp. at 20. It is true that, while claims for damages are not available under the Attorney Act, claims for injunctive relief may lie. *King*, 215 Ill. 2d at 27 ("[W]e hold that there

---

[2] *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998), cited by Nippon, is a case about interpreting the Prison Litigation Reform Act, and has no application here.

16

exists no private right of action under the Attorney Act for damages."). But such claims are only available to attorneys. *Supra* at 15.[3]

### B. Nippon fails to plausibly allege that OpenAI is engaged in the unauthorized practice of law.

Courts in Illinois, including the Seventh Circuit Court of Appeals, the Illinois Supreme Court and the judge in Dela Torre's cases, expect and encourage the use of AI by unrepresented litigants. Mot. at 13-14 (citing various authority).

Nippon does not even acknowledge these authorities, much less contest them. It ignores that AI use by litigants is allowed, indeed encouraged, and argues that ChatGPT's alleged drafting of filings, case summaries, analyses and provision of legal advice constitutes unauthorized practice of law. Opp. at 22. But use by litigants of "AI-generated content" is precisely what Illinois courts and judges have "authorized" and deemed appropriate. Baskin Decl. Ex. B, Illinois Supreme Court Policy on Artificial Intelligence at 1 ("The use of AI by litigants, attorneys, judges, judicial clerks, research attorneys, and court staff providing similar support may be expected, should not be discouraged, and is authorized provided it complies with legal and ethical standards."); *id.* Ex. C ("You can even see pleadings from *pro se* litigants that read like the real thing, because they've gotten access to software that helps them write it. . . . overall it's certainly beneficial."). Against this backdrop, a *pro se* litigant's use of AI-generated content cannot constitute unauthorized practice of law by the AI tool's provider. Were it

---

[3] Nippon argues that even if it lacks standing under the Illinois Attorney Act, it can bring its claim for unauthorized practice of law under the federal Declaratory Judgment Act. Opp. at 18-19. That is incorrect. "[T]he Declaratory Judgment Act . . . 'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action." *Aland v. U.S. Dep't of the Interior*, No. 22-CV-5821, 2023 WL 12238794, at *1 (N.D. Ill. Mar. 1, 2023); *see also Bartucci v. Wells Fargo Bank N.A.*, No. 14 CV 5302, 2015 WL 6955482, at *3 (N.D. Ill. Nov. 10, 2015) (dismissing claim brought under the Declaratory Judgment Act where plaintiff had no private right of action for alleged statutory violation).

17

otherwise, every AI company could face liability any time a litigant believes its *pro se* adversary misused a general-purpose AI chatbot tool in prosecuting their lawsuit. That is not the law.

AI tools are valuable resources for attorneys and *pro se* litigants alike, and "present[] great promise for enhancing access to justice for those without the resources to retain counsel or to represent themselves effectively." *Jones v. Kankakee County Sheriff's Department*, 164 F.4th 967, 970 (7th Cir. 2026). Ultimately, all litigants are responsible for their own filings, and recent technological advancements do not disrupt that well-settled principle. *See* Baskin Decl. Ex. B, Illinois Supreme Court Policy on Artificial Intelligence at 1 ("All users must thoroughly review AI-generated content before submitting it in any court proceeding to ensure accuracy and compliance with legal and ethical obligations."); *Jones*, 164 F.4th at 970 ("nothing about the many efficiencies and promises offered by AI eliminates the peril that may well accompany a serious abdication of the care the law demands of even unrepresented parties."); *see also* Baskin Decl. Ex. A, OpenAI TOU at 3-5 (OpenAI users are "responsible for Content"). Nippon's recourse is against Dela Torre, not OpenAI.

Under this sanctioned framework, Dela Torre's use of ChatGPT did not make ChatGPT her lawyer, something she expressly disavowed in the Terms of Use. *Id.* at 5 (prohibiting use of ChatGPT as a "substitute for professional advice."). Indeed, Illinois does not "recognize[] a cause of action for unauthorized practice of law unless the plaintiff alleged that defendants either had represented themselves as attorneys, or negligently provided services, thereby causing damages." Mot. at 15 (citing *Michalowski v. Flagstar Bank, FSB*, 2002 WL 113905, at *8 (N.D. Ill. Jan. 24, 2002)). Nippon does not allege that ChatGPT did either. Mot. at 15.[4]

---

[4] Nippon argues that OpenAI was aware that ChatGPT provided "legal assistance" as early as 2023, because of a case called *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), in which a lawyer used ChatGPT to conduct legal research and then filed fabricated, ChatGPT-generated citations without verifying them. Nippon claims that OpenAI provided a "direct response" in an article published on its

18

*Richard F. Mallen & Associates, Ltd. v. Myinjuryclaim.com Corp.,* 329 Ill. App. 3d 953 (Ill. App. Ct. 2002), cited by Nippon throughout its Opposition, is inapposite. The "sole issue on appeal [was] whether the circuit court erred in finding that plaintiff lacked standing to bring a cause of action against defendant for the unauthorized practice of law." *Id.* at 955. The court did not decide whether the defendant's alleged wrongful conduct constituted unauthorized practice of law. Moreover, in contrast to Dela Torre's use of ChatGPT and other generative AI tools in litigation, the alleged misconduct in *Mallen* was never endorsed by any court – unlike here, where many courts have endorsed the use of AI by *pro se* litigants. Moreover, the defendant in *Mallen* held itself out specifically as providing settlement advice and personalized demand letters, in contrast with OpenAI, which operates a general-purpose AI chatbot that requires users to agree they will not use ChatGPT for such advice. *Id.* at 954; Compare with Baskin Decl. Ex. A, OpenAI TOU at 5.

*In re Reynoso*, 477 F.3d 1117, 1126 (9th Cir. 2007), cited by Nippon in Opp. at 5, is equally unavailing. There, the defendant non-attorney "touted its offering of legal advice and projected an aura of expertise concerning bankruptcy petitions; and, in that context, it offered personalized—albeit automated—counsel." *Id.* In stark contrast, OpenAI expressly warns users that its output may not be accurate, that they are responsible for the content, and that output

---

website: "Improving Mathematical Reasoning with Process Supervision." Opp. at 21. This argument is incorrect and deeply flawed. First, it is not illegal for litigants to obtain "legal assistance" in the form of legal research from online resources. *See, e.g.*, Westlaw, Lexis (services for legal research offered by non-lawyers). Second, Nippon's factual recitation is inaccurate. OpenAI was not a party to *Mata*. The court sanctioned the attorney, not OpenAI, because he was responsible for the misconduct. Further, the article cited by Nippon was not a "direct response" to *Mata*, and Nippon would know better if it bothered to look. The article was published *before Mata* was decided. *Compare* https://openai.com/index/improving-mathematical-reasoning-with-process-supervision/ (dated May 31, 2023) *with Mata* (dated June 22, 2023). Finally, the article is about using AI to solve math problems; it does not reference using AI for legal research.

should not be relied on "as a sole source of truth or factual information, or as a substitute for professional advice." Baskin Decl. Ex. A, OpenAI TOU at 3-5.

### C. ChatGPT is incapable of practicing law.

The Illinois Attorney Act prohibits an unlicensed "person" from practicing law. 705 ILCS 205/1. As the Motion explains – and Nippon concedes – ChatGPT is not a "person"; it is a tool incapable of practicing law within the meaning of the statute. Mot. at 14-15; Opp. at 23 (conceding ChatGPT is "not a person"; failing to address OpenAI's cases or arguments).

Instead, Nippon argues that even though ChatGPT is not a person, OpenAI is, and it can be held liable for ChatGPT's alleged unauthorized practice of law. Opp. at 23. But that is nothing more than circular hand-waving. Because ChatGPT is incapable of practicing law, OpenAI cannot be responsible for its alleged unauthorized practice of law. *United States v. Heppner*, 820 F. Supp. 3d 292, 296 (S.D.N.Y. 2026), supports OpenAI, not Nippon. In holding that no trusting, fiduciary-based relationship exists or could exist between an AI tool and a human, *Heppner* supports that ChatGPT is not capable of practicing law.

**CONCLUSION**

For the foregoing reasons, Nippon's Complaint should be dismissed with prejudice.

20

Dated: July 17, 2026

Respectfully submitted,

*/s/ John P. Flynn*
John P. Flynn  (admitted *pro hac vice*)
Joshua A. Baskin (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower Suite 3300
(415) 947-2000
jflynn@wsgr.com
jbaskin@wsgr.com

Steven P. Mandell (ARDC #6183729)
Mandell PC
1 North Franklin Street, Suite 900
Chicago, IL 60606
 (312) 801-6337
smandell@mandellpc.com
*Counsel for Defendants*
*OpenAI Foundation and OpenAI Group PBC*

21