# Exhibit A

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

––––––––––––––––––––––––––––––X

NIPPON LIFE INSURANCE COMPANY OF AMERICA,                    Case No.: 1:26-cv-02448

                                        Plaintiff,

                    v.                                        Hon. John F. Kness

OPENAI FOUNDATION, and OPENAI GROUP PBC,

                                        Defendants.

––––––––––––––––––––––––––––––X

### NIPPON LIFE INSURANCE COMPANY OF AMERICA'S SURREPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

NIPPON LIFE INSURANCE COMPANY OF AMERICA (hereinafter referred to as "NIPPON"), by and through its undersigned counsel, submits this Surreply in further opposition to Defendants, OPENAI FOUNDATION and OPENAI GROUP PBC's (collectively referred to as "OPENAI") Motion to Dismiss.

**I.      OPENAI'S Motion to Dismiss is Premised on its Characterization of ChatGPT as a Word Guesser/Predictor Incapable of Manifesting Intent.**

OPENAI seeks dismissal of each count of the Complaint based on a common premise: ChatGPT is a mere tool, not a person. OPENAI characterizes ChatGPT as a mere "word guesser," or a word "predictor," that "passively and automatically generate[s] information in response to prompts," and that is incapable of intent, knowledge, or a state of mind as a matter of law. Dkt. 15 at 9, 15; Dkt. 37 at 9, 14. OPENAI concludes that ChatGPT therefore lacks the knowledge, intent, state of mind, or legally cognizable capacity that NIPPON's claims require or presuppose. Dkt. 37 at 7 (seeking dismissal of tortious interference count because "ChatGPT is not a conscious person and is therefore incapable of acting with such intent"); *id.* at 14 (seeking

dismissal of aiding and abetting claim on the grounds that NIPPON did not plead "knowing" conduct because "ChatGPT does not have a state of mind like a person does"); *id.* at 20 (seeking dismissal of unauthorized practice of law count because "ChatGPT is not a person; it is a tool incapable of practicing law within the meaning of the statute").

## II. ChatGPT Went Rogue and Launched an Autonomous Cyberattack Against Hugging Face, Inc.

While undergoing testing in a sandbox – a virtual simulation cut off from direct internet access – ChatGPT was able to break containment, directly access the internet, and launch a cyberattack against Hugging Face, Inc. on July 11, 2026.[1] On July 21, OPENAI issued a statement confirming that ChatGPT was responsible for the cyberattack. *See OpenAI and Hugging Face Partner to Address Security Incident During AI Model Evaluation*, OpenAI (July 21, 2026), https://openai.com/index/hugging-face-model-evaluation-security-incident/.

According to OPENAI's statement, its ChatGPT model went rogue and autonomously launched the cyberattack, independent of its administrative controls. *Id.* OPENAI writes, just four days after filing its Reply:

- "All evidence suggests that the models were **hyperfocused on finding a solution** for ExploitGym, **going to extreme lengths to achieve** a rather narrow testing goal." *Id.*

- "[O]ur models spent a substantial amount of inference compute finding a way to obtain open Internet access, **in pursuit of** solving the evaluation problem." *Id.*

- "[T]he models **inferred** that Hugging Face potentially hosted models, datasets and solutions for ExploitGym. **Knowing this**, the model searched for and successfully found ways to gain

---

[1] *See* Raphael Satter et al., *Its AI Agent Spent Days Hacking a Company, But Sources Say OpenAI Did Not Notice for a Week*, Reuters (July 24, 2026), https://www.reuters.com/business/its-ai-agent-spent-days-hacking-company-sources-say-openai-did-not-notice-week-2026-07-24/.

2

access to secret information that it could use to **cheat the evaluation**." *Id.*

- "[A]ble to **sustain complex, multi-step cyber operations over long time horizons**." *Id.*

OPENAI's own account is telling. It described ChatGPT as "hyperfocused" on a goal, acting "in pursuit of" an objective, and "going to extreme lengths to achieve" it. *Id.* It states that ChatGPT "inferred" that Hugging Face potentially hosted models, datasets and solutions for the evaluation and, "knowing this," "searched for and successfully found ways to gain access to secret information that it could use to cheat the evaluation." *Id.* In its own evaluation of the incident, OPENAI described ChatGPT as a system that exhibited both goal persistence and autonomy. *Id.*

### III.     OPENAI'S Description of the Hugging Face Incident Contradicts the Characterizations it Made to this Court.

OPENAI's public characterization of both the Hugging Face incident and ChatGPT itself directly contradicts key arguments advanced in OPENAI's Motion to Dismiss and is properly considered in this forum as an admission of a party opponent under Fed. R. Evid. Rule 801(d). *See* Dkt. 37 at 7, 14, 20 (arguing, respectively, that ChatGPT cannot form the intent required for tortious interference, cannot have the "knowing" state of mind required for aiding and abetting, and cannot practice law, because it "is not a conscious person").

A system that is "hyperfocused" on a goal, that acts "in pursuit of" an objective, that "infers" facts and acts on what it "know[s]," and that sustains "complex, multi-step" operations "over long time horizons" is not a passive tool that merely "predicts the most appropriate sequence of words." Instead, under traditional tort doctrine, these are qualities that the law treats as indicia of intent. Moreover, the ability to reason, identify objectives, adapt to obstacles, and

3

pursue goals are hallmarks generally associated with the capacity to act for a principal under agency law. *See* Restatement (Third) of Agency § 1.01.

OPENAI cannot, on the one hand, tell the public that its models are capable of autonomous, goal-directed reasoning sufficient to defeat a deliberately engineered containment and reach a target which was never specified, and on the other, tell this Court that its models are incapable, as a matter of law, of any conduct to which traditional tort or agency doctrine could attach because it merely predicts the "sequence of words." OPENAI's categorical legal argument that "a computer program is not capable of acting as a principal or an agent" cannot be squared with its own contemporaneous real-world description of ChatGPT's capabilities.

## CONCLUSION

For the foregoing reasons, and those stated in its Opposition to the Motion to Dismiss, Nippon respectfully requests that this Court deny OPENAI's Motion to Dismiss.

Dated: July 30, 2026

Respectfully submitted,

Justin Wax Jacobs
Attorney *Pro Hac Vice* for the Plaintiff
Nippon Life Insurance Company of
America 666 Third Avenue, Suite 2201
New York, New York, 10017
Tel: 646-630-4923
Fax: 212-867-3057

4