FILED
10/06/2026
THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT
BC

Case No: 1:26-CV-02448

| | | |
|---|---|---|
| NIPPON LIFE INSURANCE COMPANY OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-02448 |
| v. | ) | Honorable John F. Kness |
| OPENAI FOUNDATION, et al., | ) | |
| Defendants. | ) | |

THIRD-PARTY NOTICE PURSUANT TO FED. R. EVID. 201(b)(2) VERIFYING THAT ECF DOCKET NUMBERS 36 AND 42 STAND CORRECT AND ENTIRELY EXEMPT FROM THE LEAVE REQUIREMENTS NIPPON ERRONEOUSLY ASSERTED IN ECF NO. 43; EXTINGUISHING PLAINTIFF'S INDUCEMENT CLAIMS VIA THEIR OWN SWORN PORTRAYAL OF RESPONDENT'S TOTAL JUDICIAL AUTONOMY RECORDED IN RELATED CASE NO. 1:25-CV-01483, ECF NOS. 139 AND 140; AND DKT. 177 RECORDING COERCIVE POST-SETTLEMENT TACTICS; THE DEFINITIVE EXTINGUISHMENT OF ARBITRATION UNDER WILLIAM CARR V. GATEWAY, INC. DUE TO PLAINTIFF'S FEE DEFAULT IN AAA CASE NO. 01-25-0005-7312; EXPOSING PLAINTIFF'S SPECULATIVE DISCOVERY DRAGNET LISTING OPENAI CHATGPT, GOOGLE GEMINI, ANTHROPIC CLAUDE, PERPLEXITY AI, AND MICROSOFT COPILOT, AI PLATFORMS WITHOUT FACTUAL NEXUS; NO RELIEF SOUGHT, MINISTERIAL RECORD LOCK ONLY.

---

*PURSUANT TO FED. R. EVID. 201(b)(2) PLAINTIFF'S CERTIFIED RECORD AND SIGNED ADMISSIONS.*

*Graciela Dela Torre, a third-party non-participant and not a party to this litigation action, but explicitly referenced and targeted by name in the operative Complaint, submits this ministerial notice to complete the record under Federal Rule of Evidence 201(b)(2).*

*The Undersigned does not seek to intervene as a litigation party under FRCP Rule 24, nor does she request any civil damages, active remedies, or judicial relief in this case. This Notice is filed strictly as a ministerial cross-case record lock to preserve the structural integrity of the certified dockets against contradictory corporate positioning and to bring verified administrative facts to the attention of the Court and the OpenAI Defendants:*

*I. APPLICABILITY OF FEDERAL NOTICE ENTRY AND FRCP EXEMPTIONS*

- ***Notices of Verifiable Fact Do Not Constitute Requests for Judicial Action:** Plaintiff's Motion to Strike (ECF. 43) objects to ECF 36 and 42 based on the absence of formal intervention under FRCP Rule 24.*
- *The Structural Definitions of FRCP Rule 7 Preclude Leave Requirements for Notices: Under FRCP Rule 7(a), pleadings are limited to active complaints and answers, while FRCP Rule 7(b) defines motions as operational requests for a court order. Because the Undersigned demands no judicial remedy and seeks NO RELIEF from this Court, the intervention constraints of Rule 24 are inapplicable. A third-party requires no prior leave of court to file an informational notice of record.*
- ***The Inherent Authority of the Court to Receive Verifiable Data under Rule 201:** Under Federal Rule of Evidence 201(c)(1), a federal court possesses the authority to take judicial notice of uncontradicted public records and docket entries on its own motion (sua sponte) at any stage of a proceeding. ECF 36 and 42 function strictly as informational conduits to place certified, uncontradicted public judicial records into the court's view.*
- ***Waiver of Standing Objections via Operative Pleading Disclosures:** Plaintiff voluntarily introduced the Undersigned's identity, private contractual history, and medical records into the public domain to frame its primary claims. Having integrated the Undersigned's specific litigation conduct into the core of its Complaint, Plaintiff cannot assert that the Undersigned is a stranger to the docket for purposes of a limited factual notice.*

*II. OPERATIVE TIMELINES UNDER THE DOCTRINE OF FIRST MATERIAL BREACH*

- ***The First Defaulting Party Cannot Enforce Contract Terms:** Under Illinois contract law, a party who commits the first material breach cannot subsequently utilize that same agreement to penalize performance or compel out-of-court compliance. See Mohanty v. St. John Heart Clinic, S.C., 225 Ill. 2d 52 (2006); Goldstein v. Chicago, 503 F.2d 559 (7th Cir. 1974).*
- ***Certified Timeline of Plaintiff's Public Filings and Extracontractual Actions:** Automated federal database certifications establish that on January 28, 2025, Plaintiff Nippon filed an INTERNATIONAL demand with the International Centre for Dispute Resolution (ICDR), docketed as Case No. 1:22-cv-07059, ECF No. 51-4, contrary to the strict release mandate requiring domestic administration by the American Arbitration Association. Furthermore, the certified record confirms that Plaintiff published unredacted settlement records in the public domain via the federal court dockets under Case No. 1:22-cv-07059, ECF No. 51-1 on February 3, 2025, and re-published the same text under Case No. 1:25-cv-01483, ECF No. 44-3 on April 28, 2025, well prior to the entry of any protective sealing restrictions.*

*III. RECORD-BOUND DATA REGARDING MULTI-PLATFORM DISCOVERY DEMANDS*

- *Indiscriminate Platform Inquiries Documented in the Record: As certified in Exhibit B, Plaintiff issued discovery requests demanding complete text logs and prompts across multiple entirely independent systems, explicitly naming:* ***OpenAI's ChatGPT, Google's Gemini, Anthropic's Claude, Perplexity AI, and Microsoft's Copilot.***
- *Absence of Specific Causal Nexus: The text of Plaintiff's multi-platform demands demonstrates that Plaintiff lacked a specific evidentiary foundation connecting the OpenAI Defendants uniquely to the Undersigned's pro se defensive filings. This broad inquiry aligns with the OpenAI Defendants' Memorandum of Law regarding the authorized and encouraged use of accessible software tools by self-represented parties to enhance access to justice.*

*IV. THE SWORN CO-CASE RECORD OF JUDICIAL AUTONOMY*

- *Plaintiff's Prior Verified Posture in Case No. 1:25-cv-01483: To complete the record, the Undersigned attaches Exhibit A (Case No. 1:25-cv-01483, Dkt. 139 and 140). In paragraphs 110–114, Plaintiff formally swore under penalty of perjury that the Undersigned operates with complete judicial autonomy, executing filings driven by an autonomous "emotional agenda rooted in resentment and frustration".*
- *Factual Inconsistency Across Dockets: Plaintiff's prior sworn assertions that the Undersigned operates with total autonomous intent stand in direct opposition to the allegations at bar asserting that the Undersigned was an induced actor devoid of independent intent. This material record conflict is presented to preserve the data integrity of the dockets.*

*V. FACTUAL TRAIL OF POST-SETTLEMENT COMMUNICATIONS*

- *Real-World Disruption and Residence Intrusion: Following Plaintiff's extensive public disclosures of the Undersigned's personal case details, third-party media entities and callers have tracked and disrupted the Undersigned's privacy directly at her private residence in Elgin, Illinois.*
- *Written Demands Executed in Co-Case Dockets: As certified in Exhibit E (Docket Entry 177, Case No. 1:25-cv-01483), Plaintiff's written settlement terms dated September 18, 2025, put forth explicit demands requiring a forced admission of "judicial abuse," a $50,000.00 payment secured by an immediate lien on her home, and direct, unmonitored login access to her personal digital accounts.*

*VI. ADMINISTRATIVE CLOSURE RECORD UNDER CARR V. GATEWAY*

- *Forfeiture of Arbitral Tracks via Non-Compliance: Under the binding precedent of the Illinois Supreme Court in William Carr v. Gateway, Inc., 241 Ill. 2d 15 (2011), if an exclusive contractually designated arbitral forum becomes unavailable due to a party's non-compliance, the entire mechanism to arbitrate fails as a matter of law and is permanently extinguished.*
- *Certified Administrative Closing Log: The attached Exhibit D establishes that on April 6, 2026, the American Arbitration Association officially issued a final administrative closure of the mandated domestic track (Case No. 01-25-0005-7312) stating: "The Respondent [Nippon] has failed to submit the previously requested filing fee; accordingly, we have administratively closed our file in this matter."*

*No judicial action, ruling, or response is requested from this Court. This notice is filed strictly as a ministerial cross-case record lock under Fed. R. Evid. 201 to preserve the integrity of the certified dockets against contradictory corporate positioning.*

*Respectfully submitted, October 6, 2026.*
*By: /s/Graciela Dela Torre*

*Graciela Dela Torre, Explicitly Named Third Party Appearing Under ROR*
*Kane County, Elgin, IL 60123*
*gmestiza1@gmail.com* | *(630) 670-5914*

INDEX OF MATERIAL EXHIBITS

- EXHIBIT A: Copy of Federal Docket Entry 177 (Case No. 1:25-cv-01483), recording Plaintiff Nippon Life Insurance Company of America's written extortion demands dated September 18, 2025, requiring a $50,000 residential home lien and account invasion.
- EXHIBIT B: Copy of Plaintiff Nippon Life Insurance Company of America's Multi-Platform AI Discovery Document, and Graciela Dela Torre's Refuse and Rebuke.
- EXHIBIT C: Copy of Plaintiff Nippon Life Insurance Company of America's Request for production and Graciela Dela Torre Absolute Rejection, establishing the total exhaustion and preclusion of the arbitral mechanism.
- EXHIBIT D: Copy of the official American Arbitration Association Closure Letter dated April 6, 2026 (Case No. 01-25-0005-7312), certifying Nippon's fatal corporate fee default.

Gmail

Gracie Dlt <gmestiza1@gmail.com>

# EXHIBIT A

**Re: Dela Torre v. Nippon Life Insurance 1:25-cv-01483 responsibility attempt to confer pursuant to Dkt 174. 009848831. 2025-01669367**

**Wax Jacobs, Justin (NY)** <J-WaxJacobs@nipponlifebenefits.com>
To: Gracie Dlt <gmestiza1@gmail.com>

Thu, Sep 18, 2025 at 3:24 PM

Ms. Dela Torre,

Nippon's offer is as follows: (THIS IS PURE EXTORCION)

1) Dismiss your current Complaint against Nippon with prejudice;
2) Provide a signed admission that you abused the judicial system;
3) Provide us with access to your ChatGPT account(s) and any and all records regarding your use of ChatGPT to prosecute this lawsuit, and/or the Illinois DOI complaint;
4) Agree to a settlement payment of $50,000 to Nippon secured against your home.

Regarding your ChatGPT account, we are willing to accept printouts of all of your conversations with the chatbot regarding this lawsuit, the previous lawsuit, and the Illinois DOI/ New York DFS complaints. However, direct access to your accounts will be easier for both us and you. We would only require access for 10 days - giving us an opportunity to obtain the information we need. You can restrict our access after those 10 days. Nippon would also agree not to use your account for any purpose other than to identify and extract the information we need.

Regarding our oversight of Davies, I do not have the authority to share what we may or may not be doing.

---

**From:** Gracie Dlt <gmestiza1@gmail.com>
**Sent:** Thursday, September 18, 2025 3:48 PM
**To:** Wax Jacobs, Justin (NY) <J-WaxJacobs@nipponlifebenefits.com>; Gracie Dlt <gmestiza1@gmail.com>
**Subject:** Re: Dela Torre v. Nippon Life Insurance 1:25-cv-01483 responsibility attempt to confer pursuant to Dkt 174. 009848831. 2025-01669367

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

Mr Wax Jacobs,

Please confirm that your client's position is that I must:
1. Turn over my private login credentials to you.
2. So you can pursue a $10 million claim against OpenAi.
3. While securing this endeavor with a $50,000 lien on my home. (The only thing is keeping me off the streets)
I require clarity on the legal basis of your request.

Giving my strong suspicion of previous unauthorized access to my accounts, a concerned I have raised with you twice, and your response was that neither you or your client have gain unauthorized access, however you named a specific tool, among the numerous ones that there are out there, raise serious concerns, and that is now with the FBI.

Finally, I urge your client to consider the broader benefit of exercising an audit of my case, not as a concession, but as an opportunity for Nippon to identify systemic failures in its claims process. Alerting vendors to a potential audit would serve as a powerful corrective action preventing future wrongful denials and the costly litigation that inevitably follows. This is not just in my interest, it is profoundly in Nippon's best interest to ensure its practices are Beyond reproach. this current proposal is unacceptable. I am certain your client can and must do better, as if they are set on getting $10 million dollars, they should look at their vendors and realize why Nippon is in this position in the first place.

Best.

Grace Dela Torre

ARBITRATION ADMINISTERED BY THE
INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION (ICDR) EXHIBIT B
(IN ITS CAPACITY AS AN INTERNATIONAL DIVISION OF THE
**AMERICAN ARBITRATION ASSOCIATION** )

----------------------------------X

Nippon Life Insurance Company of America, Case No.: 01-25-0000-4189

Claimant,

v.

Graciela Dela Torre,

Respondent.

----------------------------------X

RESPONDENT UNDER ROR JURISDICTIONAL REJECTION AND REFUSAL OF CLAIMANT'S INTERROGATORIES

~~**CLAIMANT'S FIRST SET OF INTERROGATORIES**~~

RESPONDENT UNDER ROR REFUSES AND REBUKES THIS ENTIRE UNAUTHORIZED PROCEEDING.This private entity is not a court of law. This INTERNATIONAL admin panel has zero judicial power, zero contract authority, and zero jurisdiction.The single domestic case required by the agreement was already satisfied, exhausted, and permanently closed on April 6, 2026, due to Adversary/Claimant's willful corporate default in AAA Case No. 01-25-0005-7312.Under the binding authority of the Illinois Supreme Court in William Carr v. Gateway, Inc., this entire arbitral mechanism is legally dead for any and all reasons. Respondent refuses to acept a duplication of this nonpacted international shell track to bypass a corporate default. The entire burden of this deception lies on the liar adversary Justin Aaron Wax Jacobs, who has been acting contrary to the best interest of NIPPON LIFE INSURANCE COMPANY OF AMERICA, and who default-starved the domestic track while unilaterally funding this private panel against Respondent under ROR's express written refusal.NO CONSENT EXISTS. This will be the One and only document to be provided to this void record. Any and All bad-faith discovery demands and interrogatories are a absolute nullity. No facts will be stated, no programs logged, and no verifications or signatures executed for a contractually precluded track.

/s/Graciela Dela Torre respondent under a permanent ROR.

**DEFINITIONS**

1. "DELA TORRE," "YOU," or "YOUR" shall mean the Respondent, Graciela Dela Torre, its agents, representatives, consultants, accountants, attorneys, and any other person or entity acting or purporting to act on his behalf, including any person who served in any such capacity at any time during the relevant time period specified herein.

2. "NIPPON" shall mean the Claimant, Nippon Life Insurance Company of America (d/b/a Nippon Life Benefits).

3. "PERSON" includes an individual, corporation, partnership, joint venture, limited liability company, governmental entity, unincorporated organization, trust, association, or other entity and includes all of that person's principals, employees, agents, attorneys, consultants, and other representatives.

4. "CONCERN" or "CONCERNING" means consisting of, referring to, reflecting, concerning, or being in any way logically or factually connected with the matter discussed.

5. "IDENTIFY" with respect to a PERSON means to state the PERSON'S full name, address, and telephone number.

6. "IDENTIFY" with respect to a DOCUMENT means to state the type of document, general subject matter, date of the document, and the author(s), addressee(s), and recipient(s).

7. "IDENTIFY" with respect to a computer program, including an AI computer program, includes the owner and the model.

8. "ARBITRATION" means the above-captioned arbitration filed with the American Arbitration Association, case number 01-25-0000-4189.

9. "SETTLEMENT AGREEMENT" means the settlement agreement between YOU and NIPPON executed on January 2, 2024 in the case of *Graciela Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059.

10. "CASES" means all of the collective lawsuits you have filed against NIPPON, including case numbers: 1:22-cv-07059; 1:25-cv-01483; and 1:25-cv-12710 filed in the United States District Court for the Northern District of Illinois.

11. "AI PROGRAM" means any advanced software application that uses artificial intelligence and natural language processing to simulate human-like conversations across text, voice or multimodal interfaces and can collaborate with human users including, but not limited to, programs such as OpenAI's ChatGPT, Google's Gemini, Anthropic's Claude, Perplexity AI, and Microsoft's Copilot.

**INSTRUCTIONS**

1. Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

2. If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

3. Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has

more than one page, refer to the page and section where the answer to the interrogatory can be found.

4. If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

5. Your answers to these interrogatories must be verified, dated, and signed.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

State all facts CONCERNING all of the defenses, and/or arguments in defense, you plan to raise in ARBITRATION.

**INTERROGATORY NO. 2:**

State all facts CONCERNING YOUR decision to file a motion to reopen *Graciela Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059, filed in the United States District Court for the Northern District of Illinois.

**INTERROGATORY NO. 3:**

State all facts CONCERNING YOUR decision to file *Graciela Dela Torre v. Nippon Life Insurance Company of America*, 1:25-cv-01483, filed in the United States District Court for the Northern District of Illinois, against NIPPON.

**INTERROGATORY NO. 3:**

IDENTIFY all PERSONS who you transmitted, communicated or otherwise disclosed the existence, language, or contents of the SETTLEMENT AGREEMENT too.

**INTERROGATORY NO. 4:**

IDENTIFY all AI PROGRAMS YOU used in the CASES.

**INTERROGATORY NO. 5:**

State all facts CONCERNING YOUR complaints and/or requests to the Illinois Department of Insurance pertaining to NIPPON.

**VERIFICATION**

I, ________________________________, hereby solemnly declare and affirm under the penalty of perjury that the foregoing Responses to Interrogatories are true and correct to the best of my knowledge, information, and belief.

____________________________________ ______________________

Signed Dated

ARBITRATION ADMINISTERED BY THE
INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION (ICDR) EXHIBIT C
(IN ITS CAPACITY AS AN INTERNATIONAL DIVISION OF THE
**AMERICAN ARBITRATION ASSOCIATION** )

----------------------------------X

Nippon Life Insurance Company of America, Case No.: 01-25-0000-4189

Claimant,

v.

Graciela Dela Torre,

Respondent.

----------------------------------X

RESPONDENT UNDER ROR REFUSAL AND REBUKE OF REQ FOR PRODUCTION

~~**CLAIMANT'S REQUEST FOR PRODUCTION**~~

RESPONDENT UNDER ROR REFUSES AND REBUKES THIS ENTIRE UNAUTHORIZED PROCEEDING.This private entity is not a court of law. This INTERNATIONAL admin have zero judicial power, zero contract authority, and zero jurisdiction.The single domestic case required by the agreement was already satisfied, exhausted, and permanently closed on April 6, 2026, due to Adversary/Claimant's willful corporate default in AAA Case No. 01-25-0005-7312.Under the binding authority of the Illinois Supreme Court in William Carr v. Gateway, Inc., your entire arbitral mechanism is legally dead for any and all reasons. You cannot substitute an unpacted international shell track to bypass a corporate default.The entire burden of this deception lies on the liar adversary Justin Aaron Wax Jacobs, Whom has been acting contrary to the best interest if NIPPON LIFE INSURANCE COMPANY OF AMERICA, and who default-starved the domestic track while unilaterally funding this private panel against Respondent under ROR's express written refusal.

NO CONSENT EXISTS. This will the One and only document to be provided to this void record. Any and All bad-faith discovery demands are a nullity.

/s/Graciela Dela Torre Respondent under permanent ROR

**DEFINITIONS**

1. "DELA TORRE," "YOU," or "YOUR" shall mean the Respondent, Graciela Dela Torre, its agents, representatives, consultants, accountants, attorneys, and any other person or entity acting or purporting to act on his behalf, including any person who served in any such capacity at any time during the relevant time period specified herein.

2. "NIPPON" shall mean the Claimant, Nippon Life Insurance Company of America (d/b/a Nippon Life Benefits).

3. "DOCUMENT" or "DOCUMENTS" is synonymous in meaning and equal in scope to as its usual usage which includes, but is not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and any other data or data compilations stored in any medium from which information can be obtained and translated, if necessary, by the respondent into reasonably usable form. Sound recordings may include recordings of conference calls or videoconferences. Electronically stored information (ESI) may be generated or stored in several locations, including social media platforms, devices connected to the Internet of Things (IoT), workplace collaboration tools, ephemeral messaging applications, artificial intelligence (AI) platforms and chatbots (including, but not limited, to generative AI logs, user prompts, AI-generated responses, and full conversation histories) and devices or applications that capture geolocation information. The term "DOCUMENT" includes all related and relevant metadata for all electronically stored information (ESI), including but not limited to, information about the document's author, creation date, revision dates, tracked changes, and electronic comments.

4. “PERSON” includes an individual, corporation, partnership, joint venture, limited liability company, governmental entity, unincorporated organization, trust, association, or other entity and includes all of that person's principals, employees, agents, attorneys, consultants, and other representatives.

5. “CONCERN” or “CONCERNING” means consisting of, referring to, reflecting, concerning, or being in any way logically or factually connected with the matter discussed.

6. “COMMUNICATION” or “COMMUNICATIONS” means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise.

7. “IDENTIFY” with respect to a PERSON means to state the PERSON'S full name, address, and telephone number.

8. “IDENTIFY” with respect to a DOCUMENT means to state the type of document, general subject matter, date of the document, and the author(s), addressee(s), and recipient(s).

9. “ARBITRATION” means the above-captioned arbitration filed with the American Arbitration Association, case number 01-25-0000-4189.

10. “MESSAGES” means all communications in written form, whether physical or digital, including, but not limited to, mail, email, text messages, SMS messages, MMS messages, RCS messages, social media direct messages (“DMs”), ephemeral messaging, standalone instant messagers, and in-app instant messagers.

11. "CASES" means all of the collective lawsuits you have filed against NIPPON, including case numbers: 1:22-cv-07059; 1:25-cv-01483; and 1:25-cv-12710 filed in the United States District Court for the Northern District of Illinois.

12. "AI PROGRAM" means any advanced software application that uses artificial intelligence and natural language processing to simulate human-like conversations across text, voice or multimodal interfaces and can collaborate with human users including, but not limited to, programs such as OpenAI's ChatGPT, Google's Gemini, Anthropic's Claude, Perplexity AI, and Microsoft's Copilot.

13. "SETTLEMENT AGREEMENT" means the settlement agreement between YOU and NIPPON executed on January 2, 2024 in the case of *Graciela Dela Torre v. Nippon Life Insurance Company of America*, 1:22-cv-07059.

## INSTRUCTIONS

1. YOU must produce all DOCUMENTS as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features, or alternatively, organized and labeled to correspond to each request and any subpart(s) thereof to which the DOCUMENTS are responsive.

2. YOU must produce ESI, with all metadata, in the form in which it is ordinarily maintained, or in a form that is reasonably usable, with all metadata intact. For example:

(a) documents created using Microsoft Word must be produced as .doc or .docx files;

(b) documents created using Microsoft Excel must be produced as .xls or .xlsx files; and

(c) emails must be produced as .msg or .pst files.

3. These requests call for the production of all responsive DOCUMENTS in YOUR possession, custody, or control, or in the possession, custody or control of YOUR employees, predecessors, successors, parents, subsidiaries, divisions, affiliates, partners, joint venturers, brokers, accountants, financial advisors, representatives, and agents or other persons acting on YOUR behalf, without regard to the physical location of such DOCUMENTS.

4. In responding to these requests, include DOCUMENTS obtained on YOUR behalf by YOUR counsel, employees, agents or any other persons acting on YOUR behalf. If YOUR response is that the DOCUMENTS are not within YOUR possession or custody, describe in detail the unsuccessful efforts YOU made to locate each such DOCUMENT. If YOUR response is that DOCUMENTS are not under YOUR control, identify who has control over the DOCUMENTS and the location of the DOCUMENTS.

5. If any DOCUMENT was, but no longer is, in YOUR possession, subject to YOUR control, or in existence, include a statement:

(a) identifying the DOCUMENT;

(b) describing where the DOCUMENT is now;

(c) identifying who has control of the DOCUMENT;

(d) describing how the DOCUMENT became lost or destroyed or was transferred; and

(e) identifying each of those persons responsible for or having knowledge of the loss, destruction, or transfer of the Document from Your possession, custody, or control.

6. Each request contemplates production of all Documents in their entirety. If only a portion of a Document is responsive to one or more requests, the Document shall be produced in its entirety.

7. If YOU withhold any Document in whole or in part for any reason including, without limitation, a claim of privilege or other protection from disclosure such as the work product doctrine or other business confidentiality or trade secret protection, set forth in a separate log with respect to each Document:

(a) the ground of privilege or protection claimed;

(b) every basis for the privilege or protection claimed;

(c) the type of Document;

(d) its general subject matter;

(e) the Document's date; and

(f) other information sufficient to enable a full assessment of the applicability of the privilege or protection claimed.

8. To the extent YOU assert that a Document contains information that should be protected from disclosure (based on the attorney-client privilege, work product doctrine, or another protection) and non-privileged information, produce the non-privileged portions of the document. For each such Document, indicate the portion of the Document withheld by stamping the word "REDACTED" on the Document in an appropriate location that does not obscure the remaining text and substantiate the reason for withholding that portion of the Document in accordance with Your obligations as outlined in paragraph 7.

9. If YOU object to part of request, specify the part, state the objection with specificity, and produce any Documents responsive to the remaining part. YOUR response must specifically state:

(a) whether the objections asserted pertain to all or part of a request;

(b) whether You are withholding any responsive documents or categories of Documents and, if so, which of the stated objections form the basis for withholding the Documents; and

(c) how YOU intend to limit the scope of YOUR production.

10. If YOU have no Documents that respond to any particular request, YOU shall state so in writing.

11. Unless otherwise stated herein, all DOCUMENTS requested are for the period commencing December 1, 2024 up to and including present day.

12. These requests are continuing, and Your response to these requests must be supplemented when appropriate or necessary.

## DOCUMENT REQUESTS

**REQUEST NO. 1:** All DOCUMENTS you filed, submitted, or otherwise sent to a Federal Court, State Court, or Illinois Department of Insurance CONCERNING NIPPON or Justin Wax Jacobs.

**REQUEST NO. 2:** All DOCUMENTS YOU relied on in preparation for both the filing of and pursuit of YOUR CASES.

**REQUEST NO. 3:** All DOCUMENTS pertaining to all of the discussions, chats or interactions YOU have had with an AI PROGRAM CONCERNING YOUR CASES

**REQUEST NO. 4:** All DOCUMENTS pertaining to all of the discussions, chats or interactions YOU have had with any complaint or submission you made to a State or Federal AGENCY CONCERNING NIPPON or Justin Wax Jacobs.

**REQUEST NO. 5:** All MESSAGES sent by YOU to any PERSON CONCERNING the CASES.

**REQUEST NO. 6:** All MESSAGES received by YOU, sent from any PERSON, CONCERNING the CASES.

**REQUEST NO. 7:** All MESSAGES sent by YOU which included the terms and/or provisions of the SETTLEMENT AGREEMENT.

**REQUEST NO. 8:** All files, conversations, discussions, inputs and/or outputs YOU have had with an AI PROGRAM CONCERNING the CASES.

**REQUEST NO. 9:** All files, conversations, discussions, inputs and/or outputs YOU have had with an AI PROGRAM CONCERNING a complaint, submission or communication YOU have had and/or made to the Illinois Department of Insurance about NIPPON.

Case: 1:22-cv-07059 Document #: 131 Filed: 06/10/26 Page 3 of 21 PageID #:1156

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

EXHIBIT D

120 Broadway
Floor 21 – Intake
New York, NY 10271
Telephone: (856)435-6401

April 6, 2026

Claimant Graciela Dela Torre
653 Wing Street
Elgin, IL 60123
Via Email to: gmestiza1@gmail.com

Justin Wax Jacobs
Respondent Nippon Life Insurance Company of America
666 Third Avenue
Suite 2201
New York, NY 10017
Via Email to: j-waxjacobs@nipponlifebenefits.com

Case Number: 01-25-0005-7312

Graciela Dela Torre
-vs-
Nippon Life Insurance Company of America

Dear Parties:

The Respondent has failed to submit the previously requested filing fee; accordingly, we have administratively closed our file in this matter. Any filing fees received from the Claimant will be refunded under separate cover.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents may be destroyed 18 months after the date of this letter.

Please email employmentfiling@adr.org if you have any questions and we will be happy to assist you.

Sincerely,

Employment Filing Team
Employmentfiling@adr.org
(856) 679-4610

cc: